02-10-002 & 003-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

                                            NOS. 02-10-00002-CR

                                                      02-10-00003-CR

 

 


 
 
 Fedencio Pena Medellin
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

 

FROM Criminal
District Court No. 1 OF Tarrant COUNTY

----------

 

MEMORANDUM
OPINION[1]

----------

 

Introduction

          Appellant
Fedencio Pena Medellin appeals his convictions on three counts of possessing
illegal drugs.[2]  In his sole point, he challenges
the trial court’s denial of his motion to suppress, contending that the search that
led to the seizure of the drugs admitted against him at trial was illegal because
the police detained him for too long and without reasonable suspicion while awaiting
a drug-sniffing dog.  Because we hold that Appellant’s brief detention was
reasonable, we affirm.

Factual
and Procedural Background

          Around
10:35 p.m. on March 26, 2009, Corporal B.A. Farmer of the Fort Worth Police
Department’s North Zero Tolerance Team was watching a house on North Commerce
Street.  Farmer and his team had received complaints of narcotics activity at
the house, had on numerous occasions caught people leaving there with drugs, and
over the previous two years had executed two warrants seizing large quantities
of methamphetamine from the house.

          Watching
through binoculars from the next street over, Farmer saw Appellant walk from
the house, climb into a maroon Chevrolet pickup parked in the driveway, back it
out, and drive south to Long Avenue.  Farmer pulled his patrol car in behind
and followed the truck as it turned west on Long and then south on North Main. 
At Northwest 28th Street, Appellant failed to signal while turning.  Farmer
pulled him over.  The time was 10:38 p.m.

          Farmer
advised the rest of his team over his shoulder radio that he had made a traffic
stop.  When he approached Appellant and asked him for his license and proof of
insurance, Appellant had neither but gave the officer his name and driver’s
license number.  Farmer walked back to his patrol car and entered the
information on the car’s computer.  The return showed that Appellant’s driver’s
license had expired.

          Farmer
walked back to Appellant and ushered him to the sidewalk so they could talk out
of the way of traffic.  Farmer knew that people were often nervous during
traffic stops, but Appellant was abnormally so; he was “a little jittery” and—despite
the cool weather—he was sweating.

          Farmer
asked him where he was going.  Appellant replied that he was on his way to a
biker rally in Boyd, where he was working security.  Farmer asked him for
consent to search his truck and his person.  Appellant denied consent to search
the truck but granted a search of his person.  Farmer thought it was suspicious
that Appellant would give consent to one but not the other, and before searching
Appellant’s person, he requested a canine unit and a warrant check.

          The
frisk revealed no contraband.  Farmer talked with Appellant some more as he waited
for the return on the warrant check.  Another member of Farmer’s team, Officer
A. White, arrived while Farmer and Appellant were on the sidewalk.  Canine
Officer Marc Macy, who had been nearby with his dog, “Hutch,” arrived within “a
couple of minutes” of the stop and a minute after Farmer’s call, pulling up just
as Farmer was telling Appellant that the canine unit was coming.  Farmer
briefed Macy and White on the situation.

          Macy
retrieved Hutch from the back seat of his patrol car after latching the dog to
a six-foot leash.  Appellant’s demeanor visibly deflated as he watched Macy bring
out the dog; he took a deep breath and just looked at the ground.

          Macy
led Hutch to the truck, and starting at the driver’s side headlight, he led the
dog around the truck counter-clockwise to the passenger side headlight.  As
Hutch passed the door on the passenger side, he did a “head kick” toward it,
indicating that something had caught his attention.  Macy and Hutch reversed
directions upon reaching the passenger side headlight, and they began retracing
their path clockwise around the truck.  Within a couple of steps, Hutch alerted
aggressively at the passenger side door, scratching with his paws at the seam
between the door and the frame.  Macy returned Hutch to the back seat of his patrol
car and informed the others of the alert.

          Farmer
and White began searching the truck.  White pulled the passenger seat forward
and noticed that its seat cover was unzipped five to six inches in the back.  He
found a black t-shirt wadded around a baggie containing smaller baggies of
heroin, cocaine, and methamphetamine stuffed inside the opening.  Farmer found another
baggie containing “an extremely large amount” of black tar heroin on the other
side under the driver’s seat and wedged against the back wall.

          The
officers arrested Appellant.  The total elapsed time from the stop to arrest
was approximately ten minutes.

          At
trial, Appellant moved to suppress the drugs.  The trial court carried the
motion with the evidence at trial.  After the State rested, the trial court
denied the motion to suppress.  The jury convicted Appellant and, after hearing
evidence on punishment, assessed sentences of ten years’ confinement for
possession of one or more but less than four grams of cocaine, ten years’ confinement
for possession of one gram or more but less than four grams of methamphetamine,
and thirty years’ confinement for possession with intent to deliver four or
more but less than 200 grams of heroin.  The trial court sentenced Appellant
accordingly and ordered the sentences to run concurrently.

Issue
on Appeal

          Appellant
concedes that the stop was justified by his committing a traffic violation, and
he does not appear to challenge the subsequent search after the dog alerted to
his truck.  He does assert, however, that his continued detention pending the
arrival of the canine unit was unreasonable.  We disagree.

Standard
of Review

          We
review a trial court’s ruling on a motion to suppress evidence under a
bifurcated standard of review.  Amador v. State, 221 S.W.3d 666, 673
(Tex. Crim. App. 2007); Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim.
App. 1997).  In reviewing the trial court’s decision, we do not engage in our
own factual review.  Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim.
App. 1990); Best v. State, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth
2003, no pet.).  The trial judge is the sole trier of fact and judge of the
credibility of the witnesses and the weight to be given their testimony.  Wiede
v. State, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007); State v. Ross,
32 S.W.3d 853, 855 (Tex. Crim. App. 2000), modified on other grounds by
State v. Cullen, 195 S.W.3d 696 (Tex. Crim. App. 2006).  Therefore, we give
almost total deference to the trial court’s rulings on (1) questions of
historical fact, even if the trial court’s determination of those facts was not
based on an evaluation of credibility and demeanor, and
(2) application-of-law-to-fact questions that turn on an evaluation of
credibility and demeanor.  Amador, 221 S.W.3d at 673; Montanez v.
State, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006); Johnson v. State,
68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).  But when
application-of-law-to-fact questions do not turn on the credibility and
demeanor of the witnesses, we review the trial court’s rulings on those
questions de novo.  Amador, 221 S.W.3d at 673; Estrada v. State,
154 S.W.3d 604, 607 (Tex. Crim. App. 2005); Johnson, 68 S.W.3d at
652–53.

          Stated
another way, when reviewing the trial court’s ruling on a motion to suppress,
we must view the evidence in the light most favorable to the trial court’s
ruling.  Wiede, 214 S.W.3d at 24; State v. Kelly, 204 S.W.3d 808,
818 (Tex. Crim. App. 2006).  When the trial court makes explicit fact findings,
as it did here, we determine whether the evidence, when viewed in the light
most favorable to the trial court’s ruling, supports those fact findings.  Kelly,
204 S.W.3d at 818–19.  We then review the trial court’s legal ruling
de novo unless its explicit fact findings that are supported by the record
are also dispositive of the legal ruling.  Id. at 818.

          We
must uphold the trial court’s ruling if it is supported by the record and
correct under any theory of law applicable to the case even if the trial court
gave the wrong reason for its ruling.  State v. Stevens, 235 S.W.3d 736,
740 (Tex. Crim. App. 2007); Armendariz v. State, 123 S.W.3d 401, 404
(Tex. Crim. App. 2003), cert. denied, 541 U.S. 974 (2004).

          The
Fourth Amendment protects against unreasonable searches and seizures by
government officials.  U.S. Const. amend. IV; Wiede, 214 S.W.3d at 24. 
To suppress evidence because of an alleged Fourth Amendment violation, the
defendant bears the initial burden of producing evidence that rebuts the
presumption of proper police conduct.  Amador, 221 S.W.3d at 672; see
Young v. State, 283 S.W.3d 854, 872 (Tex. Crim. App. 2009).  A defendant
satisfies this burden by establishing that a search or seizure occurred without
a warrant.  Amador, 221 S.W.3d at 672.  Once the defendant has made this
showing, the burden of proof shifts to the State, which is then required to
establish that the search or seizure was conducted pursuant to a warrant or was
reasonable.  Id. at 672–73; Torres v. State, 182 S.W.3d 899, 902
(Tex. Crim. App. 2005); Ford v. State, 158 S.W.3d 488, 492 (Tex. Crim.
App. 2005).

          A
detention, as opposed to an arrest, may be justified on less than probable
cause if a person is reasonably suspected of criminal activity based on
specific, articulable facts.  Terry v. Ohio, 392 U.S. 1, 22, 88
S. Ct. 1868, 1880 (1968); Carmouche v. State, 10 S.W.3d 323, 328
(Tex. Crim. App. 2000).  An officer conducts a lawful temporary detention when
he or she has reasonable suspicion to believe that an individual is violating
the law.  Crain v. State, 315 S.W.3d 43, 52 (Tex. Crim. App. 2010); Ford,
158 S.W.3d at 492.

Analysis

          In
what is known as a Terry stop or an investigative detention, an officer
may stop and briefly detain a person suspected of criminal activity on less
information than is constitutionally required for probable cause to arrest.  Terry,
392 U.S. at 22, 88 S. Ct. at 1880; Walter v. State, 28 S.W.3d 538, 540
(Tex. Crim. App. 2000).  Routine traffic stops are more analogous to
investigative detentions than custodial arrests and are thus analyzed as Terry
stops.  Berkemer v. McCarty, 468 U.S. 420, 439, 104 S. Ct. 3138, 3150
(1984).  An investigative detention—either as a part of, or apart from, a
traffic stop—is a seizure for Fourth Amendment purposes.  See Francis v.
State, 922 S.W.2d 176, 178 (Tex. Crim. App. 1996).  Therefore, a traffic
stop and any concomitant investigative detention must be reasonable under the
United States Constitution and the Texas constitution.  See U.S. Const.
amend. IV; Tex. Const. art. I, § 9.

          An
investigative detention is reasonable, and thus constitutional, if (1) the
officer’s action was justified at the detention’s inception, and (2) the
detention was reasonably related in scope to the circumstances that justified
the interference in the first place.  Terry, 392 U.S. at 19–20, 88 S. Ct.
at 1879.  For the officer’s initial action to be justified under the first Terry
prong, we ask whether there existed specific, articulable facts that, taken
together with rational inferences from those facts, reasonably warranted that
intrusion.  Id. at 21, 88 S. Ct. at 1880; see also Davis v. State,
947 S.W.2d 240, 242 (Tex. Crim. App. 1997).  Specifically, the officer must
have a reasonable suspicion that some activity out of the ordinary is occurring
or has occurred, some suggestion to connect the detainee with the unusual
activity, and some indication that the unusual activity is related to a crime.  See
Davis, 947 S.W.2d at 244.

          In
other words, “[a]n officer conducts a lawful temporary detention when he has
reasonable suspicion to believe that an individual is violating the law.”  Ford,
158 S.W.3d at 492.  “Reasonable suspicion exists if the officer has specific,
articulable facts that, when combined with rational inferences from those
facts, would lead him to reasonably conclude that a particular person actually
is, has been, or soon will be engaged in criminal activity.”  Id.  We
give due weight not to the officer’s inchoate and unparticularized suspicion or
“hunch,” but to the specific reasonable inferences that he is entitled to draw
from the facts in light of his experience.  See Davis, 947 S.W.2d at 243
n.3.  An investigative detention that is not based on reasonable suspicion is
unreasonable and thus violates the Fourth Amendment.  Id.

          Under
the second Terry prong, an investigative detention must be temporary and
last no longer than is necessary to effectuate the purpose of the stop.  See
Florida v. Royer, 460 U.S. 491, 500, 103 S. Ct. 1319, 1325 (1983).  Once
the reason for the stop has been satisfied, the stop may not be used as a
“fishing expedition for unrelated criminal activity.”  Davis, 947 S.W.2d
at 243 (quoting Ohio v. Robinette, 519 U.S. 33, 41, 117 S. Ct. 417, 422
(1996) (Ginsburg, J., concurring)).  Also, the scope of the seizure must be
restricted to that necessary to fulfill the seizure’s purpose.  Royer, 460
U.S. at 500, 103 S. Ct. at 1325.

          Once
the traffic stop investigation is concluded, the officer must no longer detain
the driver, who must be permitted to leave.  Kothe v. State, 152 S.W.3d 54,
63–64 (Tex. Crim. App. 2004); Green v. State, 256 S.W.3d 456, 461–62
(Tex. App.—Waco 2008, no pet.).  If, however, during a valid traffic stop and
detention, the officer develops reasonable suspicion that the detainee is
engaged in criminal activity, prolonged or continued detention is justified.  See
Davis, 947 S.W.2d at 244; Green, 256 S.W.3d at 462; Perales v.
State, 117 S.W.3d 434, 439 (Tex. App.—Corpus Christi 2003, pet. ref’d).  Additional
facts and information discovered by an officer during a lawful detention may
form the basis for a reasonable suspicion that another offense has been or is
being committed.  See Razo v. State, 577 S.W.2d 709, 711 (Tex. Crim. App.
[Panel Op.] 1979); Mohmed v. State, 977 S.W.2d 624, 628 (Tex. App.—Fort
Worth 1998, pet. ref’d).  Articulable facts coming to the officer’s knowledge
during the proper stop or detention may justify further investigation.  Razo,
577 S.W.2d at 711; Mohmed, 977 S.W.2d at 628.  More specifically, if the
valid traffic stop evolves into an investigative detention of other criminal
activity (such as transporting illegal drugs) so that a canine sniff can take
place, reasonable suspicion is required to prolong the detention.  Haas v.
State, 172 S.W.3d 42, 52 (Tex. App.—Waco 2005, pet. ref’d); Hill v.
State, 135 S.W.3d 267, 269 (Tex. App.—Houston [14th Dist.] 2005, pet. ref’d);
Sims v. State, 98 S.W.3d 292, 295 (Tex. App.—Houston [1st Dist.] 2003,
pet. ref’d); McQuarters v. State, 58 S.W.3d 250, 256–57 (Tex. App.—Fort
Worth 2001, pet. ref’d).

          We
review the reasonableness of the detention from the same perspective as the
officer.  Using an objective standard, we ask whether the facts available at
the moment of detention would warrant a person of reasonable caution in the
belief that the action taken was appropriate.  See Terry, 392 U.S. at
21–22, 88 S. Ct. at 1880; Davis, 947 S.W.2d at 243.  The determination
of reasonable suspicion is made by considering the totality of the
circumstances.  Ford, 158 S.W.3d at 492–93.

          Appellant
does not challenge his initial traffic stop or the subsequent search.  He does
challenge, however, his detention between the initial stop and the search,
arguing that Farmer did not have reasonable suspicion to “prolong” his
detention.  Considering the totality of the circumstances, the trial court’s
conclusion that Farmer had reasonable suspicion to justify detaining Appellant
for a canine sniff is supported by the evidence in the record.  Farmer articulated
the following specific facts that Appellant was engaged in criminal activity:  Appellant
was seen leaving a known drug house, which had been the subject of two drug
raids by Farmer and his team over the previous two years; Farmer had
apprehended numerous persons leaving the house with illegal narcotics; the team
had received recent complaints of drug activity at the house; Appellant was
extremely nervous, more so than what would be expected for a routine traffic
stop;[3]  Appellant had neither a
driver’s license nor proof of insurance; and Appellant allowed Farmer to search
his person but did not allow him to search his truck.[4] 
Under the totality of the circumstances, we hold that Farmer had reasonable
suspicion based on specific articulable facts that, combined with rational
inferences, would lead him to reasonably conclude that Appellant actually was,
had been, or would soon be engaged in criminal activity.  See Ford, 158
S.W.3d at 492; Davis, 947 S.W.2d at 242.

          Further,
we would not characterize Appellant’s detention as prolonged.  Viewed in the
light most favorable to the trial court’s ruling, the evidence established that
the total lapsed time between the traffic stop and Appellant’s arrest was approximately
ten minutes.[5]  The record also shows
that Farmer did not issue Appellant a ticket for the original traffic
violation.  There is no evidence that the return on the warrant check came back
before Appellant was taken to jail.  It is unclear, therefore, whether the
initial purpose of the traffic stop had been concluded.  Based on the evidence
before it, the trial court reasonably could have concluded that Appellant’s
detention was not unreasonably delayed.  See Kothe, 152 S.W.3d at 58, 66
(upholding additional three to twelve minute detention pending results of
routine computer driver’s license check); cf. George v. State, 237
S.W.3d 720, 727 (Tex. Crim. App. 2007) (holding that a nonconsensual additional
ten-minute detention of a passenger without specific articulable facts after
officer issued a warning ticket to the driver was unreasonable); see generally
George E. Dix, Nonarrest Investigatory Detentions in Search and Seizure
Law, 1985, no. 5, Duke L.J. 849, 895–96 (1985) (suggesting a thirty-minute
time limit for Terry stops as a matter of state law because “it is
probably unrealistic to expect courts effectively to review officers’ decisions
to prolong detention for periods of fifteen to thirty minutes”).  Accordingly,
we hold that Appellant suffered no deprivation of his constitutional rights,
and we overrule his sole point on appeal.

 

Conclusion

          Having
overruled Appellant’s sole point on appeal, we affirm the trial court’s
judgments.

 

 

LEE GABRIEL

JUSTICE 

 

PANEL: 
GARDNER, MEIER, and GABRIEL, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  May 26, 2011









[1]See Tex. R. App. P. 47.4.





[2]The State charged Appellant
in two indictments.  The indictment in cause number 1150620D set out two
counts.  The indictment in cause number 1152944D set out four counts. 
Appellant pleaded guilty to the former and went to trial on the latter.  The
State abandoned one count and the jury convicted on all remaining counts alleged
in both indictments (the two Appellant pleaded guilty to and the three he
pleaded not guilty to) and assessed punishment.  Although Appellant filed
notices of appeal in both causes, his motion to suppress was filed in and his
point on appeal applies to only cause 1152944D.  Accordingly, we will affirm
the judgment in cause 1150620D and limit the remainder of our discussion to the
facts and law germane to cause 1152944D.





[3]Although nervousness alone
does not warrant reasonable suspicion, see Davis, 947 S.W.2d at 248 (“It
is not indicative of guilt for a person to be nervous when confronted by police
officers asking questions.”), “[e]xtreme nervousness has traditionally been a
fact that law enforcement has used in its list of elements leading up to either
reasonable suspicion or probable cause.”  Veal v. State, 28 S.W.3d 832,
837 (Tex. App.—Beaumont 2000, pet. ref’d) (citing U.S. v. Sokolow, 490
U.S. 1, 3, 109 S. Ct. 1581, 1583 (1989)).  “[N]ervous, evasive behavior is a
pertinent factor in determining reasonable suspicion.”  Illinois v. Wardlow,
528 U.S. 119, 124, 120 S. Ct. 673, 676 (2000).





[4]As with nervousness,
refusal to consent to a search, by itself, is insufficient to show reasonable
suspicion.  See Davis, 947 S.W.2d at 241; Sieffert v. State, 290
S.W.3d 478, 484 (Tex. App.—Amarillo 2009, no pet.); Green, 256 S.W.3d at
462.  Again, however, under a totality of the circumstances analysis, it may
suffice when included with other factors.  See McAnally v. State, No.
02-08-00342-CR, 2009 WL 3956749, at *3 (Tex. App.—Fort Worth Nov. 19, 2009,
pet. ref’d) (mem. op., not designated for publication).





[5]Even Appellant testified
at trial that only “about 12 minutes” elapsed between the time of his stop and
the arrival of the canine unit.