

# COURT OF APPEALS

**SECOND DISTRICT OF TEXAS**

**FORT WORTH**

## NOS. 02-10-00002-CR
## 02-10-00003-CR

FEDENCIO PENA MEDELLIN                                    APPELLANT

V.

THE STATE OF TEXAS                                                STATE

----------

FROM CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### Introduction

Appellant Fedencio Pena Medellin appeals his convictions on three counts of possessing illegal drugs.[2] In his sole point, he challenges the trial court's

---

[1]*See* Tex. R. App. P. 47.4.

[2]The State charged Appellant in two indictments. The indictment in cause number 1150620D set out two counts. The indictment in cause number 1152944D set out four counts. Appellant pleaded guilty to the former and went to trial on the latter. The State abandoned one count and the jury convicted on all

denial of his motion to suppress, contending that the search that led to the seizure of the drugs admitted against him at trial was illegal because the police detained him for too long and without reasonable suspicion while awaiting a drug-sniffing dog. Because we hold that Appellant's brief detention was reasonable, we affirm.

## Factual and Procedural Background

Around 10:35 p.m. on March 26, 2009, Corporal B.A. Farmer of the Fort Worth Police Department's North Zero Tolerance Team was watching a house on North Commerce Street. Farmer and his team had received complaints of narcotics activity at the house, had on numerous occasions caught people leaving there with drugs, and over the previous two years had executed two warrants seizing large quantities of methamphetamine from the house.

Watching through binoculars from the next street over, Farmer saw Appellant walk from the house, climb into a maroon Chevrolet pickup parked in the driveway, back it out, and drive south to Long Avenue. Farmer pulled his patrol car in behind and followed the truck as it turned west on Long and then south on North Main. At Northwest 28th Street, Appellant failed to signal while turning. Farmer pulled him over. The time was 10:38 p.m.

remaining counts alleged in both indictments (the two Appellant pleaded guilty to and the three he pleaded not guilty to) and assessed punishment. Although Appellant filed notices of appeal in both causes, his motion to suppress was filed in and his point on appeal applies to only cause 1152944D. Accordingly, we will affirm the judgment in cause 1150620D and limit the remainder of our discussion to the facts and law germane to cause 1152944D.

2

Farmer advised the rest of his team over his shoulder radio that he had made a traffic stop. When he approached Appellant and asked him for his license and proof of insurance, Appellant had neither but gave the officer his name and driver's license number. Farmer walked back to his patrol car and entered the information on the car's computer. The return showed that Appellant's driver's license had expired.

Farmer walked back to Appellant and ushered him to the sidewalk so they could talk out of the way of traffic. Farmer knew that people were often nervous during traffic stops, but Appellant was abnormally so; he was "a little jittery" and—despite the cool weather—he was sweating.

Farmer asked him where he was going. Appellant replied that he was on his way to a biker rally in Boyd, where he was working security. Farmer asked him for consent to search his truck and his person. Appellant denied consent to search the truck but granted a search of his person. Farmer thought it was suspicious that Appellant would give consent to one but not the other, and before searching Appellant's person, he requested a canine unit and a warrant check.

The frisk revealed no contraband. Farmer talked with Appellant some more as he waited for the return on the warrant check. Another member of Farmer's team, Officer A. White, arrived while Farmer and Appellant were on the sidewalk. Canine Officer Marc Macy, who had been nearby with his dog, "Hutch," arrived within "a couple of minutes" of the stop and a minute after

3

Farmer's call, pulling up just as Farmer was telling Appellant that the canine unit was coming. Farmer briefed Macy and White on the situation.

Macy retrieved Hutch from the back seat of his patrol car after latching the dog to a six-foot leash. Appellant's demeanor visibly deflated as he watched Macy bring out the dog; he took a deep breath and just looked at the ground.

Macy led Hutch to the truck, and starting at the driver's side headlight, he led the dog around the truck counter-clockwise to the passenger side headlight. As Hutch passed the door on the passenger side, he did a "head kick" toward it, indicating that something had caught his attention. Macy and Hutch reversed directions upon reaching the passenger side headlight, and they began retracing their path clockwise around the truck. Within a couple of steps, Hutch alerted aggressively at the passenger side door, scratching with his paws at the seam between the door and the frame. Macy returned Hutch to the back seat of his patrol car and informed the others of the alert.

Farmer and White began searching the truck. White pulled the passenger seat forward and noticed that its seat cover was unzipped five to six inches in the back. He found a black t-shirt wadded around a baggie containing smaller baggies of heroin, cocaine, and methamphetamine stuffed inside the opening. Farmer found another baggie containing "an extremely large amount" of black tar heroin on the other side under the driver's seat and wedged against the back wall.

4

The officers arrested Appellant. The total elapsed time from the stop to arrest was approximately ten minutes.

At trial, Appellant moved to suppress the drugs. The trial court carried the motion with the evidence at trial. After the State rested, the trial court denied the motion to suppress. The jury convicted Appellant and, after hearing evidence on punishment, assessed sentences of ten years' confinement for possession of one or more but less than four grams of cocaine, ten years' confinement for possession of one gram or more but less than four grams of methamphetamine, and thirty years' confinement for possession with intent to deliver four or more but less than 200 grams of heroin. The trial court sentenced Appellant accordingly and ordered the sentences to run concurrently.

### Issue on Appeal

Appellant concedes that the stop was justified by his committing a traffic violation, and he does not appear to challenge the subsequent search after the dog alerted to his truck. He does assert, however, that his continued detention pending the arrival of the canine unit was unreasonable. We disagree.

### Standard of Review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v.*

5

*State*, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000), *modified on other grounds by State v. Cullen*, 195 S.W.3d 696 (Tex. Crim. App. 2006). Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002). But when application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's rulings on those questions de novo. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson*, 68 S.W.3d at 652–53.

Stated another way, when reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *Wiede*, 214 S.W.3d at 24; *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When the trial court makes explicit fact findings, as it did here, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those fact findings. *Kelly*, 204 S.W.3d at 818–19. We then review the trial court's legal ruling de novo unless its

6

explicit fact findings that are supported by the record are also dispositive of the legal ruling. *Id.* at 818.

We must uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case even if the trial court gave the wrong reason for its ruling. *State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007); *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), *cert. denied*, 541 U.S. 974 (2004).

The Fourth Amendment protects against unreasonable searches and seizures by government officials. U.S. Const. amend. IV; *Wiede*, 214 S.W.3d at 24. To suppress evidence because of an alleged Fourth Amendment violation, the defendant bears the initial burden of producing evidence that rebuts the presumption of proper police conduct. *Amador*, 221 S.W.3d at 672; *see Young v. State*, 283 S.W.3d 854, 872 (Tex. Crim. App. 2009). A defendant satisfies this burden by establishing that a search or seizure occurred without a warrant. *Amador*, 221 S.W.3d at 672. Once the defendant has made this showing, the burden of proof shifts to the State, which is then required to establish that the search or seizure was conducted pursuant to a warrant or was reasonable. *Id.* at 672–73; *Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005); *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005).

A detention, as opposed to an arrest, may be justified on less than probable cause if a person is reasonably suspected of criminal activity based on specific, articulable facts. *Terry v. Ohio*, 392 U.S. 1, 22, 88 S. Ct. 1868, 1880

(1968); *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000). An officer conducts a lawful temporary detention when he or she has reasonable suspicion to believe that an individual is violating the law. *Crain v. State*, 315 S.W.3d 43, 52 (Tex. Crim. App. 2010); *Ford*, 158 S.W.3d at 492.

**Analysis**

In what is known as a *Terry* stop or an investigative detention, an officer may stop and briefly detain a person suspected of criminal activity on less information than is constitutionally required for probable cause to arrest. *Terry*, 392 U.S. at 22, 88 S. Ct. at 1880; *Walter v. State*, 28 S.W.3d 538, 540 (Tex. Crim. App. 2000). Routine traffic stops are more analogous to investigative detentions than custodial arrests and are thus analyzed as *Terry* stops. *Berkemer v. McCarty*, 468 U.S. 420, 439, 104 S. Ct. 3138, 3150 (1984). An investigative detention—either as a part of, or apart from, a traffic stop—is a seizure for Fourth Amendment purposes. *See Francis v. State*, 922 S.W.2d 176, 178 (Tex. Crim. App. 1996). Therefore, a traffic stop and any concomitant investigative detention must be reasonable under the United States Constitution and the Texas constitution. *See* U.S. Const. amend. IV; Tex. Const. art. I, § 9.

An investigative detention is reasonable, and thus constitutional, if (1) the officer's action was justified at the detention's inception, and (2) the detention was reasonably related in scope to the circumstances that justified the interference in the first place. *Terry*, 392 U.S. at 19–20, 88 S. Ct. at 1879. For the officer's initial action to be justified under the first *Terry* prong, we ask

8

whether there existed specific, articulable facts that, taken together with rational inferences from those facts, reasonably warranted that intrusion. *Id.* at 21, 88 S. Ct. at 1880; *see also Davis v. State*, 947 S.W.2d 240, 242 (Tex. Crim. App. 1997). Specifically, the officer must have a reasonable suspicion that some activity out of the ordinary is occurring or has occurred, some suggestion to connect the detainee with the unusual activity, and some indication that the unusual activity is related to a crime. *See Davis*, 947 S.W.2d at 244.

In other words, "[a]n officer conducts a lawful temporary detention when he has reasonable suspicion to believe that an individual is violating the law." *Ford*, 158 S.W.3d at 492. "Reasonable suspicion exists if the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person actually is, has been, or soon will be engaged in criminal activity." *Id*. We give due weight not to the officer's inchoate and unparticularized suspicion or "hunch," but to the specific reasonable inferences that he is entitled to draw from the facts in light of his experience. *See Davis*, 947 S.W.2d at 243 n.3. An investigative detention that is not based on reasonable suspicion is unreasonable and thus violates the Fourth Amendment. *Id.*

Under the second *Terry* prong, an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. *See Florida v. Royer*, 460 U.S. 491, 500, 103 S. Ct. 1319, 1325 (1983). Once the reason for the stop has been satisfied, the stop may not be used as a

9

"fishing expedition for unrelated criminal activity." *Davis*, 947 S.W.2d at 243 (quoting *Ohio v. Robinette*, 519 U.S. 33, 41, 117 S. Ct. 417, 422 (1996) (Ginsburg, J., concurring)). Also, the scope of the seizure must be restricted to that necessary to fulfill the seizure's purpose. *Royer*, 460 U.S. at 500, 103 S. Ct. at 1325.

Once the traffic stop investigation is concluded, the officer must no longer detain the driver, who must be permitted to leave. *Kothe v. State*, 152 S.W.3d 54, 63–64 (Tex. Crim. App. 2004); *Green v. State*, 256 S.W.3d 456, 461–62 (Tex. App.—Waco 2008, no pet.). If, however, during a valid traffic stop and detention, the officer develops reasonable suspicion that the detainee is engaged in criminal activity, prolonged or continued detention is justified. *See Davis*, 947 S.W.2d at 244; *Green*, 256 S.W.3d at 462; *Perales v. State*, 117 S.W.3d 434, 439 (Tex. App.—Corpus Christi 2003, pet. ref'd). Additional facts and information discovered by an officer during a lawful detention may form the basis for a reasonable suspicion that another offense has been or is being committed. *See Razo v. State*, 577 S.W.2d 709, 711 (Tex. Crim. App. [Panel Op.] 1979); *Mohmed v. State*, 977 S.W.2d 624, 628 (Tex. App.—Fort Worth 1998, pet. ref'd). Articulable facts coming to the officer's knowledge during the proper stop or detention may justify further investigation. *Razo*, 577 S.W.2d at 711; *Mohmed*, 977 S.W.2d at 628. More specifically, if the valid traffic stop evolves into an investigative detention of other criminal activity (such as transporting illegal drugs) so that a canine sniff can take place, reasonable suspicion is required to

10

prolong the detention. *Haas v. State*, 172 S.W.3d 42, 52 (Tex. App.—Waco 2005, pet. ref'd); *Hill v. State*, 135 S.W.3d 267, 269 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd); *Sims v. State*, 98 S.W.3d 292, 295 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd); *McQuarters v. State*, 58 S.W.3d 250, 256–57 (Tex. App.—Fort Worth 2001, pet. ref'd).

We review the reasonableness of the detention from the same perspective as the officer. Using an objective standard, we ask whether the facts available at the moment of detention would warrant a person of reasonable caution in the belief that the action taken was appropriate. *See Terry*, 392 U.S. at 21–22, 88 S. Ct. at 1880; *Davis*, 947 S.W.2d at 243. The determination of reasonable suspicion is made by considering the totality of the circumstances. *Ford*, 158 S.W.3d at 492–93.

Appellant does not challenge his initial traffic stop or the subsequent search. He does challenge, however, his detention between the initial stop and the search, arguing that Farmer did not have reasonable suspicion to "prolong" his detention. Considering the totality of the circumstances, the trial court's conclusion that Farmer had reasonable suspicion to justify detaining Appellant for a canine sniff is supported by the evidence in the record. Farmer articulated the following specific facts that Appellant was engaged in criminal activity: Appellant was seen leaving a known drug house, which had been the subject of two drug raids by Farmer and his team over the previous two years; Farmer had apprehended numerous persons leaving the house with illegal narcotics; the

11

team had received recent complaints of drug activity at the house; Appellant was extremely nervous, more so than what would be expected for a routine traffic stop;[3] Appellant had neither a driver's license nor proof of insurance; and Appellant allowed Farmer to search his person but did not allow him to search his truck.[4] Under the totality of the circumstances, we hold that Farmer had reasonable suspicion based on specific articulable facts that, combined with rational inferences, would lead him to reasonably conclude that Appellant actually was, had been, or would soon be engaged in criminal activity. *See Ford*, 158 S.W.3d at 492; *Davis*, 947 S.W.2d at 242.

Further, we would not characterize Appellant's detention as prolonged. Viewed in the light most favorable to the trial court's ruling, the evidence established that the total lapsed time between the traffic stop and Appellant's

---

[3]Although nervousness alone does not warrant reasonable suspicion, *see Davis*, 947 S.W.2d at 248 ("It is not indicative of guilt for a person to be nervous when confronted by police officers asking questions."), "[e]xtreme nervousness has traditionally been a fact that law enforcement has used in its list of elements leading up to either reasonable suspicion or probable cause." *Veal v. State*, 28 S.W.3d 832, 837 (Tex. App.—Beaumont 2000, pet. ref'd) (citing *U.S. v. Sokolow*, 490 U.S. 1, 3, 109 S. Ct. 1581, 1583 (1989)). "[N]ervous, evasive behavior is a pertinent factor in determining reasonable suspicion." *Illinois v. Wardlow*, 528 U.S. 119, 124, 120 S. Ct. 673, 676 (2000).

[4]As with nervousness, refusal to consent to a search, by itself, is insufficient to show reasonable suspicion. *See Davis*, 947 S.W.2d at 241; *Sieffert v. State*, 290 S.W.3d 478, 484 (Tex. App.—Amarillo 2009, no pet.); *Green*, 256 S.W.3d at 462. Again, however, under a totality of the circumstances analysis, it may suffice when included with other factors. *See McAnally v. State*, No. 02-08-00342-CR, 2009 WL 3956749, at *3 (Tex. App.—Fort Worth Nov. 19, 2009, pet. ref'd) (mem. op., not designated for publication).

12

arrest was approximately ten minutes.[5]  The record also shows that Farmer did not issue Appellant a ticket for the original traffic violation.  There is no evidence that the return on the warrant check came back before Appellant was taken to jail.  It is unclear, therefore, whether the initial purpose of the traffic stop had been concluded.  Based on the evidence before it, the trial court reasonably could have concluded that Appellant's detention was not unreasonably delayed. *See Kothe*, 152 S.W.3d at 58, 66 (upholding additional three to twelve minute detention pending results of routine computer driver's license check); *cf. George v. State*, 237 S.W.3d 720, 727 (Tex. Crim. App. 2007) (holding that a nonconsensual additional ten-minute detention of a passenger without specific articulable facts after officer issued a warning ticket to the driver was unreasonable); *see generally* George E. Dix, *Nonarrest Investigatory Detentions in Search and Seizure Law*, 1985, no. 5, Duke L.J. 849, 895–96 (1985) (suggesting a thirty-minute time limit for *Terry* stops as a matter of state law because "it is probably unrealistic to expect courts effectively to review officers' decisions to prolong detention for periods of fifteen to thirty minutes").  Accordingly, we hold that Appellant suffered no deprivation of his constitutional rights, and we overrule his sole point on appeal.

---

[5]Even Appellant testified at trial that only "about 12 minutes" elapsed between the time of his stop and the arrival of the canine unit.

## Conclusion

Having overruled Appellant's sole point on appeal, we affirm the trial court's judgments.

LEE GABRIEL
JUSTICE

PANEL:  GARDNER, MEIER, and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  May 26, 2011