# NO. 12-12-00153-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *MICHAEL ANTONIO SANDERS,*<br>*APPELLANT* | § | *APPEAL FROM THE 7TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *SMITH COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Michael Antonio Sanders appeals his conviction for possession of between one and four grams of cocaine, for which he was sentenced to imprisonment for thirty-five years. In two issues, Appellant challenges the legality of the police search and the sufficiency of the evidence. We affirm.

### BACKGROUND

Tyler Police Department officers Judson Moore and Adam Parker were patrolling on bicycles in an area known to have a sizeable amount of narcotics and bootlegging activity. As they rode by a house where they previously had made numerous arrests for narcotics and bootlegging violations, the officers saw Appellant walk from the house toward a vehicle. As the officers traveled toward Appellant, he entered the vehicle and started the engine, at which time the car's stereo began to play. The officers noted that the stereo in the vehicle was louder than allowed by city ordinance. As a result, at approximately 8:20 p.m., the officers initiated a stop of the vehicle.

During their investigation of the noise ordinance violation, the officers observed Appellant

take several actions that caused them to become suspicious of Appellant's recent activity. For instance, almost immediately after the officers made contact with Appellant, he told them that the vehicle belonged to his brother. Appellant further stated that he had been visiting his "brother"[1] in the house that the officers knew had, in the past, been used for illegal activity. Moreover, the officers saw an open beer can in the vehicle. Although Appellant was the sole occupant of the vehicle, he denied the can of beer was his.

Moore requested that Appellant produce his driver's license. While Appellant was retrieving his license, Moore saw that Appellant had a parole card. Moore asked Appellant about the crime relating to his parole, and Appellant responded that he was on parole for burglary of a habitation. The officers asked if Appellant had been arrested in other instances. Appellant responded, "Just that. Burglary of a vehicle, burglary of a habitation." Subsequently, however, Appellant admitted that he also had been arrested for possession of a controlled substance. The officers further noted that Appellant acted nervously.

At 8:22 p.m., the officers told Appellant that he would not be cited for the loud music, but that they still needed to complete a "field card" regarding the violation. At this time, the officers provided Appellant's information to dispatch to check for any outstanding warrants.

At 8:23 p.m., the officers requested that the K-9 unit be dispatched to their location. While they were waiting for the K-9 unit, the officers continued to investigate and waited for dispatch to respond to their request for an outstanding warrants search. During this time, Moore again questioned Appellant regarding his arrest history and learned that Appellant also had been convicted of possession of a controlled substance.

At 8:26 p.m., Moore told Appellant that the officers were checking for outstanding warrants and that a K-9 officer was en route. The record is unclear whether the officers had completed the "field card" by this time. Moments later, Moore received information from dispatch regarding Appellant and requested additional information from dispatch. The record is not clear what additional information Moore requested. Moore next requested that Appellant exit the vehicle. As Appellant was exiting the vehicle, he was engaged in a phone conversation with his brother. While the officers continued their investigation, they overheard Appellant tell his

---

[1] Appellant testified at trial that the person at the house whom he referred to as his "brother" was, in fact, a close friend whom he thought of as a brother.

brother that he "left where I told you I was going" and went to "Brother Kimmie's house." Appellant completed his phone conversation with his brother at 8:36 p.m. when the K-9 unit arrived.

It does not appear that Moore gave Appellant the "field card" containing a warning for the noise violation before the K-9 unit's arrival. Shortly after the K-9 unit's arrival, a drug dog was taken to the vehicle, and, at approximately 8:40 p.m., the dog "alerted" at the driver's side door. The officers searched the vehicle and found crack cocaine in a cigarette package inside a wooden box at the front side of the vehicle's center console. As a result, the officers arrested Appellant.

Appellant was charged by indictment with possession of between one and four grams of cocaine. The indictment further alleged that Appellant had previously been convicted of two felonies. Appellant pleaded "not guilty." Appellant filed a motion to suppress the evidence seized from his vehicle contending that the initial stop was unnecessarily and improperly lengthened to allow the K-9 unit to conduct an open air sniff.

The matter proceeded to a bench trial. After the presentation of evidence, the trial court denied Appellant's motion to suppress, and found Appellant "guilty" as charged. The court then conducted a trial on punishment, following which the court sentenced Appellant to imprisonment for thirty-five years to run consecutively to a sentence for a previous conviction. This appeal followed.

## MOTION TO SUPPRESS

In his first issue, Appellant argues that the trial court erred in denying his motion to suppress because the officers unlawfully extended the traffic stop.

### Standard of Review

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Hubert v. State*, 312 S.W.3d 554, 559 (Tex. Crim. App. 2010); *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). A trial court's decision to grant or deny a motion to suppress is generally reviewed under an abuse of discretion standard. *Shepherd v. State*, 273 S.W.3d 681, 684 (Tex. Crim. App. 2008). We give almost total deference to a trial court's determination of historical facts, especially if those determinations turn on witness credibility or demeanor, and review de novo the trial court's application of the law to facts not based on an

evaluation of credibility and demeanor. *Neal v. State*, 256 S.W.3d 264, 281 (Tex. Crim. App. 2008). When deciding a motion to suppress evidence, a trial court is the exclusive trier of fact and judge of the witnesses' credibility. *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002). Accordingly, a trial court may choose to believe or disbelieve all or any part of a witness's testimony. *See State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000).

When a trial court does not make express findings of fact, we view the evidence in the light most favorable to the trial court's ruling and assume the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record. *Lujan v. State*, 331 S.W.3d 768, 771 (Tex. Crim. App. 2011). Therefore, the prevailing party is entitled to "the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence." *State v. Castleberry*, 332 S.W.3d 460, 465 (Tex. Crim. App. 2011). Since all evidence is viewed in the light most favorable to the trial court's ruling, we are obligated to uphold its ruling on a motion to suppress if that ruling was supported by the record and was correct under any theory of law applicable to the case. *Ross*, 32 S.W.3d at 856; *Carmouche*, 10 S.W.3d at 327; *State v. Ballard*, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999).

**Governing Law**

A routine traffic stop closely resembles an investigative detention. *Powell v. State*, 5 S.W.3d 369, 375 (Tex. App.–Texarkana 1999, pet. ref'd); *United States v. Brigham*, 382 F.3d 500, 506 (5th Cir. 2004). Because an investigative detention is a seizure that implicates the United States and Texas constitutions, the traffic stop must be reasonable. U.S. CONST. amend. IV; TEX. CONST. art. I, § 9; *Francis v. State*, 922 S.W.2d 176, 178 (Tex. Crim. App. 1996). To determine the reasonableness of an investigative detention, we conduct the inquiry set forth by the United States Supreme Court in *Terry v. Ohio*: (1) whether the officer's action was justified at its inception; and (2) whether it was reasonably related in scope to the circumstances that initially justified the interference. *Terry v. Ohio*, 392 U.S. 1, 19–20, 88 S. Ct. 1868, 1879, 20 L. Ed. 2d 889 (1968); *Davis v. State*, 947 S.W.2d 240, 242 (Tex. Crim. App. 1997).

Under the first part of the inquiry, an officer's reasonable suspicion justifies an investigative detention. *Davis*, 947 S.W.2d at 242–43. Specifically, the officer must have a reasonable suspicion that some activity out of the ordinary is occurring or has occurred. *Id*. at 244 (citing *Garza v. State*, 771 S.W.2d 549, 558 (Tex. Crim. App. 1989)). An officer has reasonable

4

suspicion to detain a person if he has specific, articulable facts that, combined with rational inferences from those facts, would lead him reasonably to conclude the person detained is, has been, or soon will be engaged in criminal activity. *State v. Elias*, 339 S.W.3d 667, 674 (Tex. Crim. App. 2011). This is an objective standard. *Id*. Thus, when an officer has a reasonable basis for suspecting that a person has committed an offense, the officer may legally initiate an investigative stop. *See Powell*, 5 S.W.3d at 376 (citing *Drago v. State*, 553 S.W.2d 375, 377–78 (Tex. Crim. App. 1977)).

Under the second part of the inquiry, the "investigative stop can last no longer than necessary to effect the purpose of the stop." *Kothe v. State*, 152 S.W.3d 54, 63 (Tex. Crim. App. 2004). The issue is "whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." *Id.* at 64–65 (quoting *United States v. Sharpe*, 470 U.S. 675, 685–86, 105 S. Ct. 1568, 1569, 84 L. Ed. 2d 605 (1985)). In relation to a traffic stop, an officer can conduct a license and warrants check. *Id.* at 63. An officer also may ask the driver to exit the vehicle. *See Strauss v. State*, 121 S.W.3d 486, 491 (Tex. App.–Amarillo 2003, pet ref'd).

An investigative stop that continues longer than necessary to complete the purpose of the stop is permitted if additional facts provide a reasonable suspicion of another crime or possible crime. *Green v. State*, 256 S.W.3d 456, 462 (Tex. App.–Waco 2008, no pet.). If a valid traffic stop evolves into an investigative detention for a drug related offense so that a canine sniff can take place, reasonable suspicion is necessary to prolong the detention. *Id*. We examine the totality of the circumstances to determine the reasonableness of a temporary detention. *Curtis v. State*, 238 S.W.3d 376, 380–81 (Tex. Crim. App. 2007).

**Application**

Here, Appellant does not challenge the validity of the initial traffic stop. Instead, Appellant argues that the stop was unnecessarily lengthened to allow the K-9 unit time to arrive on the scene.

Based on our review of the record, the evidence supports the trial court's ruling under two theories. First, the trial court's implied finding that the officers did not unnecessarily lengthen the initial stop is supported by the record. As part of their investigation of Appellant's violation of the city's noise ordinance, the record reflects that the officers were required by policy to complete

5

a "field card."[2]

The officers were justified not only in completing the field card, but also in running a check for any outstanding warrants for Appellant and in requesting that Appellant exit the vehicle. Moreover, we note that as Appellant exited the vehicle, and before the officers' investigation regarding the noise violation was completed, Appellant began a phone conversation with his brother. That conversation continued until the K-9 unit arrived on the scene. The officers' investigation could have been completed more quickly, and perhaps before the K-9 unit arrived, if they had ordered Appellant off the phone. However, the officers were not required to order Appellant to conclude his phone conversation. And, undoubtedly, Appellant's continuing a phone conversation that lengthened the time for the investigation is not evidence that the officers unnecessarily lengthened the investigation.

Second, the trial court's implied finding that the officers developed reasonable suspicion during their investigation of Appellant's noise violation to suspect Appellant committed other crimes is supported by the record. Appellant was seen leaving a house after dark at which police had made several prior arrests related to narcotics and bootlegging violations. When asked about the house, Appellant told the officers that his "brother" resided there. Almost immediately, he also told the officers that the vehicle he was driving was not his vehicle. The officers each testified that people with illegal substances in a vehicle routinely attempt to distance themselves from the vehicle.

Moreover, the record reflects that Appellant acted nervously. When asked if anything illegal was in the vehicle, he responded, "Not that I know of." Appellant also denied that an open beer can in the vehicle was his even though he was the vehicle's sole occupant. The officers learned that Appellant was on parole. When they asked Appellant to list his arrests, Appellant said, "Just the burglary of a vehicle, burglary of a habitation." But later, Appellant admitted that he also had been arrested for possession of a controlled substance. The officers each testified that people with narcotics in a vehicle frequently omit any previous arrests for narcotics violations.

Considering these facts, the trial court reasonably could have determined that "the police

---

[2] The record indicates that this field card is not a ticket, but is unclear as to whether Appellant would receive a copy of the field card, similar to a person's receiving a warning citation. The record does not show that Appellant received a copy of the field card prior to the K-9 unit's arrival.

diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." *Kothe*, 152 S.W.3d at 64–65. Further, the trial court could have determined that the police developed reasonable suspicion during their initial investigation to justify a prolonged detention for a canine sniff. *See Greene*, 256 S.W.3d at 462. Giving due deference to the trial court's ruling, we hold that the trial court did not abuse its discretion by denying Appellant's motion to suppress. Appellant's first issue is overruled.

**SUFFICIENCY OF EVIDENCE**

In his second issue, Appellant argues that the evidence is legally insufficient that Appellant had knowledge of the crack cocaine and exercised control over it.

## Standard of Review and Applicable Law

Legal sufficiency is the constitutional minimum required by the Due Process Clause of the Fourteenth Amendment to sustain a criminal conviction. *See Jackson v. Virginia*, 443 U.S. 307, 315–16, 99 S. Ct. 2781, 2786–87, 61 L. Ed. 2d 560 (1979); *see also Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). When reviewing the sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson*, 443 U.S. at 320, 99 S. Ct. at 2789; *Brooks*, 323 S.W.3d at 899. Under this standard, a reviewing court does not sit as a thirteenth juror and may not substitute its judgment for that of the fact finder by reevaluating the weight and credibility of the evidence. *See Brooks*, 323 S.W.3d at 899; *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). Instead, a reviewing court defers to the fact finder's resolution of conflicting evidence unless that resolution is not rational in light of the burden of proof. *See Brooks*, 323 S.W.3d at 899–900. It is this court's duty to ensure that the evidence presented actually supports a conclusion that the defendant committed the crime. *See Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). A successful legal sufficiency challenge will result in rendition of an acquittal by the reviewing court. *See Tibbs v. Florida*, 457 U.S. 31, 41–42, 102 S. Ct. 2211, 2217–18, 72 L. Ed. 2d 652 (1982).

The sufficiency of the evidence is measured against the offense as defined by a hypothetically correct jury charge. *See Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App.

1997).  Such a charge would include one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant is tried."  *Id.*

To support Appellant's conviction for possession of a controlled substance as alleged in the indictment, the State was required to prove that Appellant intentionally or knowingly possessed cocaine in an amount greater than one gram but less than four grams.  *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(c) (West 2010).  Possession means "actual care, custody, control, or management" of an item. TEX. HEALTH & SAFETY CODE ANN. § 481.002(38) (West 2010).  The evidence used to prove possession can be either direct or circumstantial.  *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995).

When the proof is circumstantial, the state must establish that the accused's connection to the substance was more than just fortuitous.  *Id*.  In the past, courts have held that there must be additional independent facts and circumstances that link the accused to the contraband when he does not possess it on his person.  *See Poindexter v. State*, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005).  In *Evans v. State*, 202 S.W.3d 158, 163 (Tex. Crim. App. 2006), the court of criminal appeals restated the proper method to analyze the sufficiency of the evidence in cases where possession of an item is illegal.  The court acknowledged what had been called an "affirmative links" test,[3] but held that circumstantial evidence of possession could be sufficient evidence to connect a defendant to the actual care, custody, control, or management of contraband when the "logical force of the circumstantial evidence, not the number of links" supported the jury's verdict. *Id*. at 163 n.12, 166.  The court further noted that the jury had already engaged in a weight of evidence determination, one which likely included an analysis of links between a defendant and the drugs, and that under "federal and Texas law, juries trump both trial and appellate judges on weight-of-evidence determinations."  *Id*. at 164.

---

[3] Links that may circumstantially establish the sufficiency of the evidence to prove that a defendant had knowing "possession" of contraband include the following:   (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the contraband; (4) whether the defendant possessed other contraband when arrested; (5) whether the defendant made incriminating statements when arrested; (6) whether the defendant attempted to flee; (7) whether the defendant made furtive gestures; (8) whether other contraband was present; (9) whether the defendant owned or had the right to possess the place where the contraband was found; (10) whether the place where the contraband was found was enclosed; and (11) whether the conduct of the defendant indicated a consciousness of guilt.  *See Evans*, 202 S.W.3d at 162 n.12.

**Application**

Here, the circumstantial evidence that Appellant possessed the cocaine in the vehicle is compelling. When the police contacted him, Appellant was leaving a house where officers had made prior arrests for narcotics and bootlegging violations. Appellant was the only occupant of the vehicle, and the cocaine was found in an area of the vehicle easily accessible to the driver's seat—the front of the center console by the radio. Appellant admitted that he had driven the vehicle that entire day.

Appellant further admitted that he knew the resident of the known drug house. He even referred to the resident as his "brother." Appellant also had an open can of beer in the vehicle near where the cocaine was found. Although Appellant claimed that the beer was not his, the officers testified that the can of beer was cold when they conducted their search of the vehicle.

Finally, the cocaine was found inside a cigarette package inside the box. The box was Appellant's brother's, but Appellant's brother denied that the cocaine was his. And even though no one claimed ownership of the cigarette package, Appellant was observed smoking while he waited for the K-9 unit to arrive to the scene.

Nonetheless, the inference that Appellant possessed the cocaine is not the only conclusion the trial court could have reached in this case. The vehicle belonged to Appellant's brother. More importantly, the box in which the cocaine was found was also Appellant's brother's. The cocaine likewise could have belonged to Appellant's brother. But Appellant's brother specifically denied this fact. Additionally, other individuals had ridden in the vehicle earlier that day. Thus, it is possible that one of those individuals hid the cocaine in the box where the officers found it.

However, the trial court's conclusion that the cocaine was possessed by Appellant was a reasonable one under the facts of this case, and we give the fact finder's determination as to conflicting evidence great deference. *See **Johnson v. State***, 23 S.W.3d 1, 14 (Tex. Crim. App. 2000). Therefore, we hold that the evidence is legally sufficient to support Appellant had knowledge of the crack cocaine and exercised control over it. Appellant's second issue is overruled.

9

## DISPOSITION

Having overruled Appellant's first and second issues, we *affirm* the trial court's judgment.

## BRIAN HOYLE
Justice

Opinion delivered April 3, 2013.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**APRIL 3, 2013**

**NO. 12-12-00153-CR**

**MICHAEL ANTONIO SANDERS,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 7th Judicial District Court

of Smith County, Texas. (Tr.Ct.No. 007-1040-11)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

11