**Ronald Lewis GREEN, Appellant**

v.

**The State of TEXAS, Appellee.**

**No. 10–07–00085–CR.**

Court of Appeals of Texas,
Waco.

April 23, 2008.

Amanda Doan, Attorney At Law, Corsicana, TX, for Appellant/Relator.

Nicole M. Crain, Dan V. Dent, Hill County District Atty., Hillsboro, TX, for Appellee/Respondent.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

BILL VANCE, Justice.

After the trial court denied his motion to suppress, Appellant Ronald Green entered into a plea agreement for the possession of a controlled substance (less than one gram), receiving four years of deferred adjudication community supervision with the right to appeal the suppression ruling. We will affirm.

### Evidence

Around 10:00 a.m. on January 27, 2006, Israel Abrego, a Hillsboro police warrant officer, saw a pickup truck on Sycamore without a front license plate as the vehicle was approaching him. After it passed, Abrego turned and noticed that the truck did not have a rear license plate either and decided to make a traffic stop. Abrego went around the block and noticed the truck stopped in front of a house on Vineyard, where he saw a man turn and walk away from the truck to the house. From his experience (he had made a traffic stop of a vehicle that had just left the house and the driver possessed crack) and from other officers, Abrego knew the house to be a "drug house" and he thought that the driver was picking up narcotics. Abrego activated his lights and stopped the truck. The stop was not videotaped; Abrego's usual police car was in the shop, and he was using a temporary car and had not turned on the power.

Before Abrego got out of his car, Green, the truck's driver, had gotten out and began walking toward Abrego, who was getting out of his car. Standing behind his door for protection, Abrego ordered Green, who had been making nervous glances toward his truck, to return to his truck. From Abrego's experience, similar nervous glances at a stopped vehicle had always resulted in something illegal being found. He had to tell Green several times to get back in his truck, and because Green then left his door open, Abrego told him to close it and to lower the window. Abrego said that he sent Green back to his truck because, even if Green had a gun in the truck, Green would have to then get back out of the truck to shoot him or shoot from his truck, which would have given Abrego more of a shield and more cover. But Abrego did admit that putting Green back in the truck would have given him access to a gun if one were in the truck. Abrego did not notice any arm or hand movements by Green in the truck, but Abrego says he was concerned for his own safety based on Green's nervousness.

As Abrego approached the truck, he noticed a "dealer" tag in the truck's rear

window. He then approached Green, advised him of the reason for the stop, and asked for driver's license and insurance information, which Green provided. Abrego saw no contraband in plain sight, nor did he smell an odor of drugs or of a masking agent, but he asked Green to get out of the truck so they could talk. Abrego said that, at this point, Green was being detained for investigation and was not free to leave because he was nervous and was seen in front of a known drug house. Green asked why he had to get out, and Abrego told him that it was because he was acting nervous and suspicious, thus making Abrego think that Green was trying to hide something. Abrego found nothing on Green's person.

Abrego asked Green if he had anything illegal in this truck, and Green responded, "No, why?" Abrego asked if he could search the truck, and Green again said, "No, why?" Abrego then told Green that because of the way he was acting, Abrego believed that Green was hiding something. He told Green that he didn't need his permission to search his truck and was going to do it anyway: "I have reason to search your vehicle, I'm going to search it but I'm going to ask you anyway." Abrego testified that he was going to search the truck with or without Green's consent. Abrego asked for consent again, and Green told him to go ahead. Abrego searched the truck and found crack cocaine in a cigarette box stuffed next to the seat. The detention lasted from ten to fifteen minutes.

Green's sole issue asserts that the trial court erred in denying his motion to suppress the evidence obtained from the warrantless search. Specifically, Green alleges that: (1) once Abrego determined that no traffic violation had occurred, the detention should have ended because Abrego lacked reasonable suspicion to continue the detention; and (2) Green's consent to search was involuntary and thus invalid.

## Standard of Review

■ To suppress evidence on an alleged violation of Fourth Amendment rights, the defendant bears the initial burden of producing evidence that rebuts the presumption of proper police conduct. *Ford v. State*, 158 S.W.3d 488, 492 (Tex.Crim.App. 2005). A defendant satisfies this burden by establishing that a search or seizure occurs without a warrant. *Id.* Once the defendant makes this showing, the burden shifts to the State, which must then establish that the search or seizure was conducted with a warrant or was reasonable. *Id.*

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex.Crim.App.2000); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim.App.1997). A trial court's denial of a motion to suppress is reviewed for abuse of discretion. *Oles v. State*, 993 S.W.2d 103, 106 (Tex.Crim.App.1999). The trial court's findings of fact are given "almost total deference," and in the absence of explicit findings, the appellate court assumes the trial court made whatever appropriate implicit findings that are supported by the record. *Carmouche*, 10 S.W.3d at 327–28; *Guzman*, 955 S.W.2d at 89–90. But when the trial court's rulings do not turn on the credibility and demeanor of the witnesses, we review de novo a trial court's rulings on mixed questions of law and fact. *Estrada v. State*, 154 S.W.3d 604, 607 (Tex.Crim.App.2005). Therefore, although due weight should be given to the inferences drawn by trial judges and law enforcement officers, determinations of matters such as reasonable suspicion and probable cause are reviewed de novo on appeal. *Guzman*, 955 S.W.2d at 87.

## Applicable Law

 In this case, Green does not challenge Abrego's initial traffic stop. In what is know as a *Terry* stop or an investigative detention, an officer may stop and briefly detain a person suspected of criminal activity on less information than is constitutionally required for probable cause to arrest. *Terry v. Ohio*, 392 U.S. 1, 22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968); *Walter v. State*, 28 S.W.3d 538, 540 (Tex. Crim.App.2000). Routine traffic stops are more analogous to investigative detentions than custodial arrests and are thus analyzed as *Terry* stops. *Berkemer v. McCarty*, 468 U.S. 420, 439, 104 S.Ct. 3138, 3150, 82 L.Ed.2d 317 (1984). An investigative detention—either as a part of, or apart from, a traffic stop—is a seizure for Fourth Amendment purposes. *See Francis v. State*, 922 S.W.2d 176, 178 (Tex. Crim.App.1996). Therefore, a traffic stop and any concomitant investigative detention must be reasonable under the United States and Texas Constitutions. *See* U.S. CONST. amend. IV; TEX. CONST. art. I, § 9.

 An investigative detention is reasonable, and thus constitutional, if (1) the officer's action was justified at the detention's inception, and (2) the detention was reasonably related in scope to the circumstances that justified the interference in the first place. *Terry*, 392 U.S. at 19–20, 88 S.Ct. at 1879. For the officer's initial action to be justified under the first *Terry* prong, we ask whether there existed specific, articulable facts that, taken together with rational inferences from those facts, reasonably warranted that intrusion. *Id.* at 21, 88 S.Ct. at 1880; *see also Davis v. State*, 947 S.W.2d 240, 242 (Tex.Crim.App. 1997). Specifically, the officer must have a reasonable suspicion that some activity out of the ordinary is occurring or has occurred, some suggestion to connect the detainee with the unusual activity, and some indication that the unusual activity is related to crime. *See Davis*, 947 S.W.2d at 244.

 In other words, "an officer conducts a lawful temporary investigative detention when the officer has reasonable suspicion to believe that an individual is violating the law." *Ford*, 158 S.W.3d at 492. "Reasonable suspicion exists if the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person actually is, has been, or soon will be engaged in criminal activity." *Id.* We give due weight not to the officer's inchoate and unparticularized suspicion or "hunch," but to the specific reasonable inferences that he is entitled to draw from the facts in light of his experience. *See Davis*, 947 S.W.2d at 243 n. 3. An investigative detention that is not based on reasonable suspicion is unreasonable and thus violates the Fourth Amendment. *Id.*

 Under the second *Terry* prong, an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. *See Florida v. Royer*, 460 U.S. 491, 500, 103 S.Ct. 1319, 1325, 75 L.Ed.2d 229 (1983). Once the reason for the stop has been satisfied, the stop may not be used as a "fishing expedition for unrelated criminal activity." *Davis*, 947 S.W.2d at 243 (quoting *Ohio v. Robinette*, 519 U.S. 33, 41, 117 S.Ct. 417, 422, 136 L.Ed.2d 347 (1996) (Ginsberg, J., concurring)). Also, the scope of the seizure must be restricted to that necessary to fulfill the seizure's purpose. *Royer*, 460 U.S. at 500, 103 S.Ct. at 1325.

Once the traffic stop investigation is concluded, the officer must no longer detain the driver, who must be permit-

**462**

ted to leave. *Kothe,* 152 S.W.3d at 63–64; *see Perales v. State,* 117 S.W.3d 434, 439 (Tex.App.-Corpus Christi 2003, pet. ref'd). . . .

If, during a valid traffic stop and detention, the officer develops reasonable suspicion that the detainee is engaged in criminal activity, prolonged or continued detention is justified. *See Davis,* 947 S.W.2d at 244; *Perales,* 117 S.W.3d at 439. Additional facts and information discovered by an officer during a lawful detention may form the basis for a reasonable suspicion that another offense has been or is being committed. *See Razo v. State,* 577 S.W.2d 709, 711 (Tex. Crim.App. [Panel Op.] 1979); *Powell,* 5 S.W.3d at 378–79; *Mohmed,* 977 S.W.2d at 628. Articulable facts coming to the officer's knowledge during the proper stop or detention may justify further investigation. *Razo,* 577 S.W.2d at 711; *Mohmed,* 977 S.W.2d at 628. More specifically, if the valid traffic stop evolves into an investigative detention of other criminal activity (such as transporting illegal drugs) so that a canine sniff can take place, reasonable suspicion is required to prolong the detention. *Wolf,* 137 S.W.3d at 802; *Hill v. State,* 135 S.W.3d 267, 269 (Tex.App.-Houston [14th Dist.] 2005, pet. ref'd); *Sims v. State,* 98 S.W.3d 292, 295 (Tex.App.-Houston [1st Dist.] 2003, pet. ref'd); *McQuarters v. State,* 58 S.W.3d 250, 256–57 (Tex.App.-Fort Worth 2001, pet. ref'd).

*Haas v. State,* 172 S.W.3d 42, 52–53 (Tex. App.-Waco 2005, pet. ref'd).

On appeal, we review the reasonableness of the detention from the same perspective as the officer: using an objective standard, we ask whether the facts available at the moment of detention would warrant a person of reasonable caution in the belief that the action taken was appropriate. *See*

*Terry,* 392 U.S. at 21–22, 88 S.Ct. at 1880; *Davis,* 947 S.W.2d at 243. The determination of reasonable suspicion is made by considering the totality of the circumstances. *Ford,* 158 S.W.3d at 492–93.

*Continued Detention*

 Green argues that nervousness and his being near a known drug house did not warrant continued detention. Nervousness alone does not warrant reasonable suspicion. *See Davis,* 947 S.W.2d at 248 ("It is not indicative of guilt for a person to be nervous when confronted by police officers asking questions."). In *Haas,* we said:

> "Extreme nervousness has traditionally been a fact that law enforcement has used in its list of elements leading up to either reasonable suspicion or probable cause." *Veal,* 28 S.W.3d at 837 (citing *Sokolow,* 490 U.S. at 3, 109 S.Ct. at 1583). "[N]ervous, evasive behavior is a pertinent factor in determining reasonable suspicion." *Illinois v. Wardlow,* 528 U.S. 119, 124, 120 S.Ct. 673, 676, 145 L.Ed.2d 570 (2000). But nervousness alone is not sufficient to be a factor giving rise to reasonable suspicion. *LeBlanc v. State,* 138 S.W.3d 603, 608 n. 6 (Tex.App.-Houston [14th Dist.] 2004, no pet.).

*Haas,* 172 S.W.3d at 54 n. 7. Nor can mere presence in a high-crime area serve as the sole basis for a *Terry* stop. *Gurrola v. State,* 877 S.W.2d 300, 303 (Tex.Crim.App. 1997).

But considering the totality of the circumstances, we disagree with Green that Abrego's continued detention was unreasonable. Abrego articulated the following specific, articulable facts that Green was engaged in criminal activity: Green had stopped in front of a known drug house, with someone walking from Green's truck back to the house; Green had gotten out of and away from his truck when he was

pulled over and was walking toward Abrego's car, and he initially did not comply with Abrego's order to return to his truck; and Green's nervousness and nervous glances at his truck. Under the totality of the circumstances, the trial court did not err in implicitly determining that Abrego had reasonable suspicion to continue to detain Green after the purpose of the traffic stop had been satisfied. *See Haas,* 172 S.W.3d at 53–54.

*Consent to Search*

■■■■ Green next challenges the voluntariness of the alleged consensual search that led to Abrego's discovery of the controlled substance because of Abrego's statement to Green that he did not need his consent because he was going to search Green's truck anyway.

> One of the established exceptions to both the requirements of a warrant and probable cause is a search conducted pursuant to consent. *Corea v. State,* 52 S.W.3d 311, 315–16 (Tex.App.-Houston [1st Dist.] 2001, pet. ref'd) (citing *Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 2043–44, 36 L.Ed.2d 854 (1973)). The State can establish the lawfulness of an illegal search through bearing the burden of proving, by clear and convincing evidence, that consent was freely and voluntarily given. *Id.* at 316 (citing *Bumper v. North Carolina,* 391 U.S. 543, 548, 88 S.Ct. 1788, 1791, 20 L.Ed.2d 797 (1968)). Hence, the State must show that the consent was positive and unequivocal and not merely an acquiescence to a claim of lawful authority.

*Grubbs v. State,* 177 S.W.3d 313, 317–18 (Tex.App.-Houston [1st Dist.] 2005, pet. ref'd).

In this case, the State concedes that Abrego did not have valid consent: "in this case the officer did not have valid consent as he implied by his statement 'I don't need your consent to search' that the defendant had no right to resist the search." (State's Brief at 8). We agree. The State contends, however, that the search was not illegal for two reasons: (1) officer safety, and (2) probable cause existed.

*Vehicle Frisk*

■■■■ The State first posits that Abrego could conduct a "vehicle frisk" for his own safety. A weapons search is not authorized in all confrontational situations. *See Carmouche,* 10 S.W.3d at 329 (a weapons search is "only justified where the officer can point to specific and articulable facts which reasonably lead him to conclude that the suspect might possess a weapon").

A police officer who has lawfully detained a person for investigation of suspected criminal activity may conduct a limited search for weapons only if the circumstances give the officer reason to believe that the person detained is armed and dangerous. *See Terry v. Ohio,* 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Spillman v. State,* 824 S.W.2d 806, 811 (Tex.App.-Austin 1992, pet. ref'd). Under some circumstances, this right to conduct a protective frisk may also extend to the passenger compartment of the detainee's automobile.

> [T]he search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on "specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant" the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons.

*Michigan v. Long,* 463 U.S. 1032, 1049, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983)

(quoting *Terry,* 392 U.S. at 21, 88 S.Ct. 1868, 20 L.Ed.2d 889). A police officer may not search an automobile for weapons whenever the officer effects an investigative stop, but may do so only if the officer possesses the level of suspicion identified in *Terry. See id.* n. 14, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889.

A police officer's authority to search for weapons in the absence of probable cause is narrowly drawn, even when the officer reasonably suspects criminal activity. *See Terry,* 392 U.S. at 27, 88 S.Ct. 1868, 20 L.Ed.2d 889. In determining whether an officer acted reasonably in a particular case, due weight must be given, not to the officer's inchoate and unparticularized suspicion or hunch, but to the specific reasonable inferences which the officer is entitled to draw from the facts in light of experience. *See id.*

*Horton v. State,* 16 S.W.3d 848, 852–53 (Tex.App.-Austin 2000, no pet.).

In this case, Abrego offered the following reasons for his search of the passenger compartment of Green's truck for the officer's own safety: when Abrego pulled him over, Green got out of and away from his truck and walked toward Abrego's car, and he initially did not comply with Abrego's order to return to his truck; and Green was nervous and made nervous glances toward at his truck. Yet despite this alleged safety concern, Abrego ordered Green back into his truck. Abrego admitted that this would have given Green access to a gun if one were in his truck.

Abrego's reasons for a "vehicle frisk," coupled with his inconsistent and counterintuitive action in ordering Green back into the truck—where he would have access to the very weapon that allegedly serves as the basis for Abrego's concerns about his own safety—result in our conclusion that

he did not possesses a reasonable belief based on specific and articulable facts that, taken together with the rational inferences from those facts, reasonably warrant him in believing that Green was dangerous and had in his truck a weapon that he could gain immediate control of. *See Long,* 463 U.S. at 1049, 103 S.Ct. at 3480; *State v. Thirty Thousand Six Hundred Sixty Dollars and no/100,* 136 S.W.3d 392, 402–03 (Tex.App.-Corpus Christi 2004, pet. denied); *Horton,* 16 S.W.3d at 853–54; *cf. Ramsey v. State,* 806 S.W.2d 954, 958 (Tex. App.-Austin 1991, pet. ref'd) (holding that officer had specific and articulable facts warranting reasonable belief that defendant posed danger *if he were permitted to reenter his car* because defendant had tried to hide shaving kit from officer, and that officer acted reasonably in taking preventive measures to ensure there were no weapons within defendant's grasp *before* allowing him to return to car); *cf. also Tasby v. State,* 111 S.W.3d 178 (Tex.App.-Eastland 2003, no pet.) (finding officers justified in searching car's compartment because they thought car's occupants had been involved in robbery and one officer saw defendant reach under seat to either place or retrieve an object). Abrego's "vehicle frisk" for his own safety was illegal.

*Probable Cause for Warrantless Search*

▪▪▪ The State final contention is that Abrego had probable cause to conduct a warrantless search of Green's truck for drugs.

Under both state and federal law, a police officer may conduct a warrantless search of an automobile if he or she has probable cause to believe a crime has been committed and there is contraband located somewhere inside the vehicle. *Carroll v. United States,* 267 U.S. 132, 158–59, 45 S.Ct. 280, 287, 69 L.Ed. 543 (1925); *Wiede v. State,* 214 S.W.3d 17, 24 (Tex.Crim.App.2007). The justifica-

tions for this automobile exception are that vehicles are inherently mobile and the expectation of privacy with respect to an automobile is relatively low. *Id.* Furthermore, the justification to conduct a warrantless search does not vanish once the vehicle is immobilized. *See Michigan v. Thomas,* 458 U.S. 259, 261, 102 S.Ct. 3079, 3081, 73 L.Ed.2d 750 (1982); *State v. Guzman,* 959 S.W.2d 631, 634 n. 3 (Tex.Crim.App.1998). Accordingly, a vehicle may be searched on the basis of probable cause to believe that it contains contraband although exigent circumstances do not exist to justify such a warrantless search. *Id.; Dixon v. State,* 206 S.W.3d 613, 619 n. 25 (Tex.Crim.App.2006) ("A finding of probable cause 'alone satisfies the automobile exception to the Fourth Amendment warrant requirement.' ").

In determining probable cause, courts must consider the totality of the circumstances. *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). Probable cause exists when the facts and circumstances within the officer's knowledge and about which he has [reasonably] trustworthy information are sufficient in themselves to warrant a person of reasonable caution to believe that a crime has been committed. *Torres v. State,* 182 S.W.3d 899, 901 (Tex. Crim.App.2005). The sum of the information known to the cooperating officers at the time of a search is to be considered in determining whether there was sufficient probable cause. *Woodward v. State,* 668 S.W.2d 337, 344 (Tex.Crim. App.1982). *Curry v. State,* 228 S.W.3d 292, 295 (Tex. App.-Waco 2007, pet. ref'd).

Abrego articulated the following as reasons why he had probable cause to search Green's truck: stopping in front of a known drug house, with someone walking from Green's truck; getting out of and away from his truck when he was pulled over and walking toward Abrego's car, and initially not complying with Abrego's order to return to his truck; and nervousness and nervously looking at his truck. Based on his training and experience—including his prior stop of a vehicle after it had just left the same house and the driver possessed crack—and knowledge from other officers about the house, Abrego believed that a drug buy had just happened and that drugs would be found in Green's truck.

Under the *totality* of the circumstances, the officer had probable cause to search Green's truck. *See Curry,* 228 S.W.3d at 295. Accordingly, the trial court did not err in denying the motion to suppress.

We overrule Green's sole issue and affirm the trial court's judgment.

(Chief Justice GRAY concurs in the judgment. He does not join any part of the opinion. A separate opinion will not be issued. He notes, however, that the entire discussion of the "Vehicle Frisk" is unnecessary to the decision and is, therefore, worthless dicta.)