# NO. 12-14-00100-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *ROBERT LILLEY,* *APPELLANT* | § | *APPEAL FROM THE 217TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *ANGELINA COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Robert Lilley appeals his conviction for possession of between four and two hundred grams of cocaine, for which he was sentenced to imprisonment for ten years. In one issue, Appellant argues that the trial court erred by overruling his motion to suppress evidence. We affirm.

## BACKGROUND

Texas State Trooper Heith White stopped Appellant on U.S. Highway 59 in Angelina County for driving with an obstructed license plate. When Trooper White asked for Appellant's driver's license, Appellant stated that he did not have one. Trooper White learned that the vehicle belonged to the passenger, Regina McDaniel. He asked Appellant to step inside his patrol car while he checked the driver's license status, arrest warrant status, and criminal history of each occupant.

While awaiting the results, Trooper White inquired about the purpose of their trip. Appellant stated that they had just been driving around in Shepherd. Trooper White found it unusual that they had made a three hour trip to simply drive around, especially when the price of gasoline was quite high at the time. He then spoke with McDaniel at her vehicle. She told him

that they had stayed overnight at her sister's home in Houston and dropped off her nephew there. She stated that she and Appellant had been together throughout the entire trip.

Trooper White then went back to his patrol car to finish the citation. He told Appellant that McDaniel said they had gone to Houston to drop off her nephew, and Appellant agreed with that. The stories diverged again, however, when Appellant stated that he was dropped off at a friend's home at some point during the trip. Moreover, Appellant and McDaniel were very unsure of their arrival time, the length of the trip, and other details. At that point, Trooper White believed that they were involved in criminal activity.

Trooper White also noticed that both Appellant and McDaniel seemed very nervous when speaking with him. He testified that he could see Appellant's carotid artery pumping. Trooper White also noticed that McDaniel's hands were shaking as she handed him her proof of insurance, and she continued to look through a stack of papers even after she found the proof of insurance.

When the criminal history check was returned, Trooper White learned that Appellant had been arrested numerous times for drug possession and other charges. He then went to speak with McDaniel again to try to clarify the inconsistencies in the stories. McDaniel became increasingly nervous and could not resolve the discrepancies between her story and Appellant's. After speaking to McDaniel for about three minutes, Trooper White obtained her consent to search the vehicle. During the search, he located a bag containing a white powdery substance inside a cup of milk in the front console. The substance was later determined to be cocaine.

Appellant was charged by indictment with possession of between four and two hundred grams of cocaine. He filed a motion to suppress the evidence. At the hearing on the motion to suppress, the trial judge stated that he was unsure of the trooper's ability to see Appellant's carotid artery pumping. However, he found the remainder of the evidence sufficient to show that Trooper White had reasonable suspicion that Appellant was involved in criminal activity, and he denied the motion to suppress.

Appellant then pleaded "guilty," and the matter proceeded to a bench trial on punishment. The trial court assessed his punishment at imprisonment for ten years. This appeal followed.

In his sole issue, Appellant argues that the trial court erred in denying his pretrial motion to suppress. In the motion, Appellant challenged the initial stop and the extended detention. In this appeal, Appellant does not challenge the initial stop, but challenges the extended detention and, additionally, the voluntariness of the consent to search the vehicle.

**Standard of Review**

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. ***Hubert v. State***, 312 S.W.3d 554, 559 (Tex. Crim. App. 2010); ***Carmouche v. State***, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). A trial court's decision to grant or deny a motion to suppress is generally reviewed under an abuse of discretion standard. ***Shepherd v. State***, 273 S.W.3d 681, 684 (Tex. Crim. App. 2008). We give almost total deference to a trial court's determination of historical facts, especially if those determinations turn on witness credibility or demeanor, and review de novo the trial court's application of the law to facts not based on an evaluation of credibility and demeanor. ***Neal v. State***, 256 S.W.3d 264, 281 (Tex. Crim. App. 2008). When deciding a motion to suppress evidence, a trial court is the exclusive trier of fact and judge of the witnesses' credibility. ***Maxwell v. State***, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002). Accordingly, a trial court may choose to believe or disbelieve all or any part of a witness's testimony. *See* ***State v. Ross***, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000).

When a trial court does not make express findings of fact, we view the evidence in the light most favorable to the trial court's ruling and assume the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record. ***Lujan v. State***, 331 S.W.3d 768, 771 (Tex. Crim. App. 2011). Therefore, the prevailing party is entitled to "the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence." ***State v. Castleberry***, 332 S.W.3d 460, 465 (Tex. Crim. App. 2011). When all evidence is viewed in the light most favorable to the trial court's ruling, an appellate court is obligated to uphold the ruling on a motion to suppress if that ruling was supported by the record and was correct under any theory of law applicable to the case. *See* ***Ross***, 32 S.W.3d at 856; ***Carmouche***, 10 S.W.3d at 327; ***State v. Ballard***, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999).

**Governing Law**

A routine traffic stop closely resembles an investigative detention. ***Powell v. State***, 5 S.W.3d 369, 375 (Tex. App.—Texarkana 1999, pet. ref'd); *see also* ***United States v. Brigham***,

382 F.3d 500, 506 (5th Cir. 2004). Because an investigative detention is a seizure that implicates the United States and Texas Constitutions, the traffic stop must be reasonable. U.S. CONST. amend. IV; TEX. CONST. art. I, § 9; *Francis v. State*, 922 S.W.2d 176, 178 (Tex. Crim. App. 1996). To determine the reasonableness of an investigative detention, we conduct the inquiry set forth by the United States Supreme Court in *Terry v. Ohio* and determine (1) whether the officer's action was justified at its inception and (2) whether it was reasonably related in scope to the circumstances that initially justified the interference. *See Terry v. Ohio*, 392 U.S. 1, 19-20, 88 S. Ct. 1868, 1879, 20 L. Ed. 2d 889 (1968); *Davis v. State*, 947 S.W.2d 240, 242 (Tex. Crim. App. 1997).

Under the first part of the inquiry, an officer's reasonable suspicion justifies an investigative detention. *Davis*, 947 S.W.2d at 242-43. Specifically, the officer must have a reasonable suspicion that some activity out of the ordinary is occurring or has occurred. *Id.* at 244 (citing *Garza v. State*, 771 S.W.2d 549, 558 (Tex. Crim. App. 1989)). An officer has reasonable suspicion to detain a person if he has specific, articulable facts that, combined with rational inferences from those facts, would lead him reasonably to conclude that the person detained is, has been, or soon will be engaged in criminal activity. *State v. Elias*, 339 S.W.3d 667, 674 (Tex. Crim. App. 2011). This is an objective standard. *Id.* Thus, when an officer has a reasonable basis for suspecting that a person has committed an offense, the officer may legally initiate an investigative stop. *See Powell*, 5 S.W.3d at 376 (citing *Drago v. State*, 553 S.W.2d 375, 377-78 (Tex. Crim. App. 1977)).

Under the second part of the inquiry, the "investigative stop can last no longer than necessary to effect the purpose of the stop." *Kothe v. State*, 152 S.W.3d 54, 63 (Tex. Crim. App. 2004). The issue is "whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." *Id.* at 64-65 (quoting *United States v. Sharpe*, 470 U.S. 675, 685-86, 105 S. Ct. 1568, 1569, 84 L. Ed. 2d 605 (1985)). With regard to a traffic stop, an officer can conduct a license and warrants check. *Id.* at 63. An officer also may ask the driver to exit the vehicle. *See Strauss v. State*, 121 S.W.3d 486, 491 (Tex. App.—Amarillo 2003, pet. ref'd).

An investigative stop that continues longer than necessary to complete the purpose of the stop is permitted if additional facts provide a reasonable suspicion of another crime or possible crime. *Green v. State*, 256 S.W.3d 456, 462 (Tex. App.—Waco 2008, no pet.). While reasonable

suspicion allows an officer to temporarily detain someone, the officer must act to confirm or dispel his suspicions quickly. *See Matthews v. State*, 431 S.W.3d 596, 603 (Tex. Crim. App. 2014). A police officer may request consent to search a motor vehicle after the purpose of a traffic stop has been accomplished so long as it is reasonable under the circumstances and the police officer does not convey a message that compliance with his request is required. *Leach v. State*, 35 S.W.3d 232, 235-36 (Tex. App.—Austin 2000, no pet.). We examine the totality of the circumstances to determine the reasonableness of a temporary detention. *Curtis v. State*, 238 S.W.3d 376, 380-81 (Tex. Crim. App. 2007).

**Extended Detention**

After all of the computer checks were returned, Trooper White questioned McDaniel for about three minutes and then requested consent to search the vehicle. Appellant argues that the trooper should have allowed Appellant and McDaniel to leave immediately after the computer checks were returned. He contends that Trooper White had no reasonable suspicion of another crime, and that his continued questioning extended the detention beyond a reasonable duration. The State does not dispute that the questioning extended the stop beyond its original purpose, or that Trooper White needed reasonable suspicion of another crime or possible crime to continue Appellant's detention. *See Green*, 256 S.W.3d at 462. But the State contends that Trooper White developed reasonable suspicion based on several observations he made during the course of the encounter.

First, Trooper White testified that U.S. Highway 59 is a major drug corridor. Second, Appellant and McDaniel behaved nervously. Appellant's carotid artery was visibly pumping. McDaniel's hands were shaking as she handed Trooper White her proof of insurance. She also continued looking through her stack of papers after she found the proof of insurance. McDaniel became increasingly nervous throughout the encounter.

Third, Trooper White found Appellant's and McDaniel's accounts of the trip conflicting and unbelievable. Appellant first stated that they were merely driving around. McDaniel stated that they had taken her nephew to her sister's home, stayed overnight, and were never separated. After hearing that McDaniel had stated they dropped off her nephew, Appellant agreed with that statement but stated that he and McDaniel had been separated. Both Appellant and McDaniel had difficulty answering questions about basic details of the trip and appeared to be fabricating their stories.

Finally, Trooper White received Appellant's criminal history, which showed that he had been arrested numerous times for drug offenses.

Based on our review of the record, we conclude that the evidence supports the trial court's finding that Trooper White developed reasonable suspicion during his investigation of Appellant's traffic violation to suspect that Appellant was involved in other criminal activity. Considering these facts, the trial court reasonably could have determined that Trooper White "diligently pursued a means of investigation that was likely to confirm or dispel [his] suspicions quickly, during which time it was necessary to detain [Appellant]." *See Kothe*, 152 S.W.3d at 64-65. Moreover, the trial court reasonably could have determined that Trooper White developed reasonable suspicion during his initial investigation to justify a prolonged detention to ask for clarification of the basic details of the trip and request consent to search. *See Green*, 256 S.W.3d at 462. Having given due deference to the trial court's ruling, we hold that the trial court did not abuse its discretion by denying Appellant's motion to suppress based upon Appellant's extended detention during the traffic stop.

## Voluntariness of Consent

Appellant contends that McDaniel's consent to search the vehicle was not voluntary, and that it was tainted by the unreasonably prolonged detention. The State counters that the consent was voluntary, and, further, that Appellant lacks standing to complain about the voluntariness of McDaniel's consent. Because Appellant did not challenge the voluntariness of the consent at the trial level, we are constrained from addressing the merits of this complaint.

Preservation of error is a systemic requirement on appeal. *Wilson v. State*, 311 S.W.3d 452, 473 (Tex. Crim. App. 2010). It is the duty of the appellate courts to ensure that a claim is preserved in the trial court before addressing its merits. *Id.* In general, a claim is preserved for appellate review only if (1) the complaint was made to the trial court by a timely and specific request, objection, or motion, and (2) the trial court either ruled on the request, objection, or motion or refused to rule and the complaining party objected to that refusal. TEX. R. APP. P. 33.1(a); *Geuder v. State*, 115 S.W.3d 11, 13 (Tex. Crim. App. 2003). If a party fails to properly object to errors at trial, even constitutional errors can be forfeited. *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012).

At the suppression hearing, Appellant challenged only the initial traffic stop and the extended detention. He did not challenge the voluntariness of McDaniel's consent to search the

vehicle. Therefore, Appellant did not preserve his complaint regarding the voluntariness of the consent. *See* TEX. R. APP. P. 33.1(a). Accordingly, we do not address this complaint. *See **Wilson***, 311 S.W.3d at 473.

## DISPOSITION

Having overruled Appellant's sole issue, we ***affirm*** the trial court's judgment.

**JAMES T. WORTHEN**
Chief Justice

Opinion delivered April 15, 2015.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)

7



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

### APRIL 15, 2015

### NO. 12-14-00100-CR

**ROBERT LILLEY,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 217th District Court

of Angelina County, Texas (Tr.Ct.No. 2011-0544)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that the decision be certified to the court below for observance.

James T. Worthen, Chief Justice
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*