# NO. 12-15-00316-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *JOSEPH MARION CHAMBLISS,*<br>*APPELLANT* | § | *APPEAL FROM THE 7TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *SMITH COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Joseph Marion Chambliss appeals his conviction for possession of a controlled substance, methamphetamine, for which he was sentenced to imprisonment for six years. Appellant raises one issue on appeal, in which he challenges the denial of his motion to suppress. We affirm.

### BACKGROUND

Appellant was charged with possession of a controlled substance, methamphetamine, in an amount of less than one gram. Appellant filed a motion to suppress the evidence in which he asserted that Texas Department of Public Safety Trooper Chaney Wade impermissibly extended a traffic stop to allow a drug dog to conduct an open air search. At the suppression hearing, Wade testified that he observed Appellant operating a vehicle with an inoperable headlight, and he initiated a traffic stop. At the time Wade initiated the traffic stop, Appellant was traveling from what Wade identified as a high-crime area that had problems with thefts, drugs, driving while intoxicated, and speeding. Wade also noted that Appellant was traveling in the evening, which is when the criminal activity in the area increased.

When he initially made contact with Appellant, Wade observed that Appellant was extremely nervous, shaking uncontrollably, sweating, mumbling, and fidgety. Wade's interaction with Appellant was recorded by his traffic unit's video and audio recording system, and a copy

of the recording was introduced into evidence. The recording supports Wade's testimony and shows that Appellant began speaking very excitedly and disjointedly when Wade first approached Appellant's vehicle. Wade also noticed that Appellant was not "making sense." Appellant could not give consistent details about where he had been or where he was going. He said that he was going to visit a female, but he could give only her first name. He also stated that he went down the road where the female lived but did not stop at her house. After his initial interaction with Appellant, Wade suspected that Appellant had engaged in criminal activity. He believed Appellant had ingested narcotics, was potentially under the influence, and perhaps involved in theft.

Wade conversed with Appellant for a few moments before returning to his vehicle to check Appellant's license status and to determine if he had any outstanding warrants. Appellant had a valid license and no outstanding warrants. Wade learned that Appellant was a convicted felon and had a conviction for possession of marijuana. During this time, Wade prepared the paperwork for a warning citation to Appellant for the defective headlight.

Wade returned to Appellant's vehicle and asked if he was on parole or probation. Appellant responded that he was on parole from a felony conviction for stealing a backhoe. Wade asked Appellant if he had anything illegal in the vehicle. Appellant denied having anything illegal, but admitted having beer in the vehicle, which violated the conditions of his parole. Appellant also changed his story about why he was in the area.

Wade testified that he has been in law enforcement for fourteen years and has arrested many people whom he determined were under the influence of methamphetamine. Based on the totality of the circumstances known to Wade at that point, Wade believed that Appellant could be intoxicated from alcohol or methamphetamine. Accordingly, Wade conducted a horizontal gaze nystagmus test. From that test, Wade determined that Appellant had not consumed an intoxicating amount of alcohol. However, he observed that Appellant's pupils were constricted, which indicated that he may have recently ingested methamphetamine. At this point, Wade believed that Appellant had recently ingested and was likely in possession of methamphetamine. Wade asked Appellant if he had taken methamphetamine. Appellant denied any recent methamphetamine use, but admitted having used methamphetamine in the distant past.

Believing that Appellant had recently engaged in methamphetamine use and was possibly intoxicated, Wade asked Appellant for permission to search his vehicle. Appellant refused,

2

claiming that he allowed the police to search his vehicle in the past and that, as a result, he was stopped more because it gave him or his vehicle "a bad name." Wade then called for a drug dog. The drug dog arrived, and during an open air search, alerted on Appellant's vehicle. Wade and another trooper searched Appellant's vehicle and found a small amount of methamphetamine.

The trial court denied Appellant's motion to suppress. The trial court stated the grounds for its ruling, as follows:

> The Court finds that the search was a "warrantless" search after a traffic stop by law enforcement. The Court finds that law enforcement had both reasonable suspicion and probable cause to make the traffic stop in question for a defective headlight violation. The Court finds that the Defendant did provide a valid Texas Driver's License and that law enforcement had a right to check the Defendant's warrant status, criminal history, insurance status and the status of Defendant's driver's license. The Court further finds that while briefly waiting for the return of said radio checks that same constituted a reasonable investigatory detention under applicable law. The Court finds that law enforcement diligently pursued the investigation of the original purpose for the stop. The trooper had reasonable suspicion to investigate for a possible DWI or drug offense based upon the officer's training and experience over 15 years, the Defendant's prior arrests for drug offenses and admission of prior methamphetamine use, Defendant's mumbling, inconsistent stories, leaving a high crime area, sweating, excessive nervousness, time of night, Defendant being on parole and admitting to possession of alcohol in violation of his parole conditions and the field sobriety tests conducted. The Court further finds the open air canine sniff/search confirmed the presence of a controlled substance in defendant's vehicle as seen on the COBAN recording of the traffic stop in question.

Appellant subsequently pleaded "guilty" to the offense, and the trial court sentenced Appellant to imprisonment for six years. This appeal followed.

## MOTION TO SUPPRESS

In his sole issue, Appellant contends that the trial court erred in denying his motion to suppress because Wade unlawfully extended the traffic stop. Specifically, he argues that the stop was unnecessarily lengthened to allow time for the K-9 Unit to arrive at the scene.

### Standard of Review

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Hubert v. State*, 312 S.W.3d 554, 559 (Tex. Crim. App. 2010); *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). A trial court's decision to grant or deny a motion to suppress is generally reviewed under an abuse of discretion standard. *Shepherd v. State*, 273 S.W.3d 681, 684 (Tex. Crim. App. 2008). We give almost total deference to a trial court's determination of historical facts, especially if those determinations turn on witness credibility or

demeanor, and review de novo the trial court's application of the law to facts not based on an evaluation of credibility and demeanor. *Neal v. State*, 256 S.W.3d 264, 281 (Tex. Crim. App. 2008). When deciding a motion to suppress evidence, a trial court is the exclusive trier of fact and judge of the witnesses' credibility. *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002). Accordingly, a trial court may choose to believe or disbelieve all or any part of a witness's testimony. *See State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000).

When a trial court makes express findings of fact, we view the evidence in the light most favorable to the trial court's ruling and determine whether the evidence supports those factual findings. *Valtierra v. Stater*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). The prevailing party is entitled to "'the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence.'" *State v. Castleberry*, 332 S.W.3d 460, 465 (Tex. Crim. App. 2011) (quoting *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008)). When all evidence is viewed in the light most favorable to the trial court's ruling, an appellate court is obligated to uphold the ruling on a motion to suppress if that ruling was supported by the record and was correct under any theory of law applicable to the case. *See Ross*, 32 S.W.3d at 855-56; *Carmouche*, 10 S.W.3d at 327-28; *State v. Ballard*, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999).

**Governing Law**

A routine traffic stop closely resembles an investigative detention. *Powell v. State*, 5 S.W.3d 369, 375 (Tex. App.–Texarkana 1999, pet. ref'd); *see also United States v. Brigham*, 382 F.3d 500, 506 (5th Cir. 2004). Because an investigative detention is a seizure that implicates the United States and Texas Constitutions, the traffic stop must be reasonable. U.S. CONST. amend. IV; TEX. CONST. art. I, § 9; *Johnson v. State*, 365 S.W.3d 484, 488 (Tex. App.—Tyler 2012, no pet.). When evaluating the reasonableness of an investigative detention, we conduct the inquiry set forth by the United States Supreme Court in *Terry v. Ohio* to determine whether (1) the officer's action was justified at its inception; and (2) it was reasonably related in scope to the circumstances that initially justified the interference. *See Terry v. Ohio*, 392 U.S. 1, 19–20, 88 S. Ct. 1868, 1879, 20 L. Ed. 2d 889 (1968); *Davis v. State*, 947 S.W.2d 240, 242 (Tex. Crim. App. 1997).

Under the first part of the inquiry, an officer's reasonable suspicion justifies an investigative detention. *Davis*, 947 S.W.2d at 242–43. Specifically, the officer must have a

reasonable suspicion that some activity out of the ordinary is occurring or has occurred. *Id.* at 244. An officer has "reasonable suspicion to detain a person if he has specific, articulable facts that, combined with rational inferences from those facts, would lead him reasonably to conclude that the person detained is, has been, or soon will be engaged in criminal activity." *State v. Elias*, 339 S.W.3d 667, 674 (Tex. Crim. App. 2011). This is an objective standard. *Id.* Thus, when an officer has a reasonable basis for suspecting that a person has committed an offense, the officer may legally initiate an investigative stop. *See Powell*, 5 S.W.3d at 376 (citing *Drago v. State*, 553 S.W.2d 375, 377–78 (Tex. Crim. App. 1977)).

Under the second part of the inquiry, the "investigative stop can last no longer than necessary to effect the purpose of the stop." *Kothe v. State*, 152 S.W.3d 54, 63 (Tex. Crim. App. 2004). The issue is "'whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant.'" *Id.* at 64 (quoting *United States v. Sharpe*, 470 U.S. 675, 685–86, 105 S. Ct. 1568, 1575, 84 L. Ed. 2d 605 (1985)). With regard to a traffic stop, an officer can conduct a license and warrants check. *Id.* at 63; *see also Rodriguez v. United States*, 135 S. Ct. 1609, 1615, 191 L.Ed.2d 492 (2015). An officer can check for outstanding warrants against the driver and can conduct other tasks that have the objective of "ensuring that vehicles on the road are operated safely and responsibly." *Rodriguez*, 135 S. Ct. at 1615. An officer also may ask the driver to exit the vehicle. *See Strauss v. State*, 121 S.W.3d 486, 491 (Tex. App.–Amarillo 2003, pet. ref'd).

An investigative stop that continues longer than necessary to complete the purpose of the stop is permitted if additional facts provide a reasonable suspicion of another crime or possible crime. *Green v. State*, 256 S.W.3d 456, 462 (Tex. App.–Waco 2008, no pet.). If a valid traffic stop evolves into an investigative detention for a drug related offense so that a canine sniff can take place, reasonable suspicion is necessary to prolong the detention. *Id.*; *see also Rodriguez*, 135 S. Ct. at 1614 (authority for detention of person for traffic violation ends when tasks tied to the traffic infraction are or reasonably should have been completed). We examine the totality of the circumstances to determine the reasonableness of a temporary detention. *Curtis v. State*, 238 S.W.3d 376, 380–81 (Tex. Crim. App. 2007).

While reasonable suspicion allows an officer to temporarily detain someone, the officer must act to confirm or dispel his suspicions quickly. *See Matthews v. State*, 431 S.W.3d 596,

603 (Tex. Crim. App. 2014). One method of confirming or dispelling reasonable suspicion that an individual has committed a drug-related offense is to have a trained K–9 unit perform an "open air" search of the vehicle. *Id.* If the drug dog alerts, the presence of drugs is confirmed, and the officer may conduct a warrantless search. *See id.* at 603–04. If the drug dog does not alert, generally, the temporary detention ceases. *Id.* at 604.

**Analysis**

The record indicates that Appellant was detained longer than necessary to issue a warning citation for a defective headlight. However, the State contends that the extended detention was permissible because the investigating officer obtained reasonable suspicion of another crime before he had completed the warning citation for the defective headlight. According to the State, Wade developed reasonable suspicion that Appellant possessed methamphetamine or was intoxicated by it based on his observations during the course of his encounters with Appellant.

To detain Appellant longer than necessary to issue the warning citation for the defective headlight, Trooper Wade needed reasonable suspicion that Appellant had committed or soon would be committing another crime or possible crime. *See Green*, 256 S.W.3d at 462. Wade believed that he was justified in detaining Appellant longer because the totality of the circumstances gave him a high level of suspicion that Appellant had recently used methamphetamine and either currently possessed it or was intoxicated from it.

Based on our review of the record, we conclude that the evidence supports the trial court's finding that Wade developed reasonable suspicion during his investigation of Appellant's traffic violation to suspect that Appellant committed other crimes. Considering these facts, the trial court reasonably could have determined that Wade "diligently pursued a means of investigation that was likely to confirm or dispel [his] suspicions quickly, during which time it was necessary to detain [Appellant]." *Kothe*, 152 S.W.3d at 64–65. Wade detained Appellant for the defective headlight, but during that detention, Wade developed reasonable suspicion that Appellant was in possession of methamphetamine, a portion of which he had recently ingested. Thus, the trial court reasonably could have determined that Wade developed reasonable suspicion of a second crime during his initial investigation to justify a prolonged detention for a canine sniff. *See Green*, 256 S.W.3d at 462. Having given due deference to the trial court's ruling, we hold that the trial court did not abuse its discretion by denying Appellant's motion to

suppress based upon Appellant's extended detention during the traffic stop. Appellant's sole issue is overruled.

## DISPOSITION

Having overruled Appellant's sole issue, we *affirm* the judgment of the trial court.

**BRIAN HOYLE**
Justice

Opinion delivered August 17, 2016.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)

7



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**AUGUST 17, 2016**

**NO. 12-15-00316-CR**

**JOSEPH MARION CHAMBLISS,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 7th District Court

of Smith County, Texas (Tr.Ct.No. 007-1177-15)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*