**Opinion issued October 6, 2016**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-15-00649-CR

_____

**DARIOUS FABRIESE LINDSEY, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 351st District Court**
**Harris County, Texas**
**Trial Court Case No. 1435106**

---

## MEMORANDUM OPINION

A grand jury indicted Darious Lindsey for possession of a controlled substance, namely cocaine. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115 (West 2009). After denying Lindsey's motion to suppress, the trial court found

him guilty and sentenced him to confinement for one year. On appeal, Lindsey challenges the trial court's denial of his motion to suppress. We affirm.

## Background

In July 2014, Houston Police Department Officers Turrentine and Duron were surveilling a known crack house, where they had previously found illegal narcotics sale activity. In the past, the police had made arrests of persons leaving the house with narcotics. Turrentine saw a vehicle arrive at the house, park in the driveway, stay for a couple of minutes, and then depart. Duron estimated that the vehicle stayed in the driveway of the house for ten to fifteen minutes.

Turrentine and Duron did not observe whether any of the vehicle's occupants entered the house. After the vehicle left the driveway, Turrentine and Duron followed it. The driver then failed to stop at a stop sign and turned without signaling, at which point the police officers conducted a traffic stop. The driver did not have a driver's license or any other form of identification. Turrentine arrested the driver for driving without a license and placed her in the back of the police cruiser.

Turrentine asked Lindsey, who was a passenger in the car, to step out of the vehicle. Turrentine testified that, "Immediately he's extremely nervous, he's shaking, he's looking around. So I know something is wrong with him just by his demeanor." Turrentine asked Lindsey whether he had any illegal drugs or a

2

weapon on his person. Lindsey admitted that he had a bottle of alprazolam in his front left pocket for which he did not have a prescription. Turrentine removed the bottle of alprazolam from Lindsey's front pocket, opened it, and found the drug and two rocks of crack cocaine inside. Officer Duron tagged, field-tested, and stored the crack rocks. After Turrentine and Duron testified about the crack rocks, Lindsey moved to suppress their testimony and the evidence of the crack cocaine on the basis that the officers had no probable cause to detain Lindsey. The trial court denied the motion, found Lindsey guilty of possession of a controlled substance, and sentenced him to confinement for one year.

## DISCUSSION

Lindsey argues that Turrentine's order to exit the vehicle violated the Fourth Amendment because it occurred after the traffic stop had been completed and the driver was handcuffed in the police vehicle. He further contends that the officers lacked a reasonable suspicion for detaining Lindsey for questioning.

### I. Standard of Review and Applicable Law

We evaluate a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Ford v. State*, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005). The trial judge is the sole trier of fact and judge of the weight and credibility of the evidence and testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007). Accordingly, we defer to the trial court's determination of historical facts if

3

the record supports them. *Ford*, 158 S.W.3d at 493. We review de novo the trial court's application of the law to those facts. *Id.* "[T]he prevailing party is entitled to 'the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence.'" *State v. Castleberry*, 332 S.W.3d 460, 465 (Tex. Crim. App. 2011) (quoting *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008)). A trial court's ruling will be sustained if it is "reasonably supported by the record and correct on any theory of law applicable to the case." *Laney v. State*, 117 S.W.3d 854, 857 (Tex. Crim. App. 2003) (quoting *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002)).

"Law enforcement and citizens engage in three distinct types of interactions: (1) consensual encounters; (2) investigatory detentions; and (3) arrests." *State v. Woodard*, 341 S.W.3d 404, 410–11 (Tex. Crim. App. 2011) (first citing *Florida v. Bostick*, 501 U.S. 429, 434, 111 S. Ct. 2382, 2386 (1991); and then citing *Gerstein v. Pugh*, 420 U.S. 103, 111–12, 95 S. Ct. 854, 862; and then citing *Terry v. Ohio*, 392 U.S. 1, 30–31, 88 S. Ct. 1868, 1884–85 (1968)). Consensual police-citizen encounters do not implicate Fourth Amendment protections. *Id.* at 411 (citing *Bostick*, 501 U.S. at 434, 111 S. Ct. at 2386). In contrast, if there is a detention, the detaining officer must have reasonable suspicion that the person "is, has been, or soon will be, engaged in criminal activity." *Id.* (citing *Florida v. Rodriguez*, 469 U.S. 1, 5–6, 105 S. Ct. 308, 310–11 (1984)). A police officer has reasonable

4

suspicion to detain if he has specific, articulable facts that, combined with rational inferences from those facts, would lead him reasonably to conclude that the person detained is, has been, or soon will be engaged in criminal activity. *Matthews v. State*, 431 S.W.3d 596, 603 (Tex. Crim. App. 2014).

We examine the reasonableness of a temporary investigative detention in light of the totality of the circumstances to determine whether an officer had an objectively justifiable basis for the detention. *Id.* (first citing *Terry*, 392 U.S. at 21–22, 88 S. Ct. 1868, 1880; and then citing *United States v. Cortez*, 449 U.S. 411, 417–18, 101 S. Ct. 690, 695, (1981)); *Balentine v. State*, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002) (citing *Woods v. State*, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997)). Reasonable suspicion may exist even if the conduct of the person detained is "as consistent with innocent activity as with criminal activity." *York v. State*, 342 S.W.3d 528, 536 (Tex. Crim. App. 2011) (quoting *Curtis v. State*, 238 S.W.3d 376, 378–79 (Tex. Crim. App. 2007)).

When there is a warrantless arrest, the arresting officer must have "probable cause to believe the same." *Woodard*, 341 S.W.3d at 410–11 (citing *Atwater v. City of Lago Vista*, 532 U.S. 318, 354, 121 S. Ct. 1536, 1557 (2001)). Probable cause to arrest exists when facts and circumstances within the knowledge of the arresting officer, and of which he has reasonably trustworthy information, would warrant a reasonably prudent person in believing that a particular person has

committed or is committing a crime. *State v. Ballard*, 987 S.W.2d 889, 892 (Tex. Crim. App. 1999).

## II. Analysis

Police may not extend a traffic stop once the tasks tied to the traffic infraction have been completed. *Rodriguez v. United States*, 135 S. Ct. 1609, 1614 (2015). Since traffic stops can be dangerous, however, it is permissible for police to require a passenger to exit the vehicle to ensure officer safety during a traffic stop without additional reasonable suspicion. *Id.* at 1616, 135; *Maryland v. Wilson*, 519 U.S. 408, 410, 117 S. Ct. 882, 884 (1997).

Lindsey acknowledges that, according to *Maryland v. Wilson*, an officer may order passengers to get out of the car pending completion of the stop. *See id.* at. 415, 117 S. Ct. at 886. However, the traffic stop usually ends when the police have no further need to control the scene, and inform the passengers they are free to leave. *Arizona v. Johnson*, 555 U.S. 323, 325, 129 S. Ct. 781, 783 (2009). Turrentine asked Lindsey to exit the vehicle after he determined that the driver had no driver's license or identification, placed the driver under arrest, and detained her in the back seat of the police cruiser. The officers had yet to secure the vehicle, determine whether Lindsey was authorized to drive the vehicle, or inventory its contents. The traffic stop thus was not completed before Turrentine asked Lindsey

to exit the vehicle. As a result, the order did not violate the Fourth Amendment. *See id.*

Lindsey relies on *St. George v. State* to contend that the officer's questioning was not based on any reasonable suspicion. 237 S.W.3d 720, 726 (Tex. Crim. App. 2007). In *St. George*, the Court of Criminal Appeals held that a request for identification from a passenger after the completion of a traffic stop for an inoperative license-plate light was impermissible absent reasonable suspicion of criminal activity. *Id.* But the facts in *St. George* are different from the facts presented here. In *St. George*, the driver produced a driver's license and had valid inspection and registration stickers. *Id.* at 722. The officer continued questioning the passenger for several minutes after the warning had issued and the traffic stop was completed, and the officer told the passenger that his identification problem had to be resolved before he could leave. *Id.* at 726.

In this case, Lindsey was a passenger in a vehicle that the officers followed after it had parked for several minutes at a crack house. The driver of the car did not have a driver's license or any other identification, and she was placed in the police cruiser. When Turrentine asked Lindsey to exit the car, Turrentine noticed that Lindsey appeared extremely nervous and was shaking and looking around.

The facts in this case are more like those in *Green v. State*. 256 S.W.3d 456 (Tex. App.—Waco 2008, no pet.). In *Green*, the court of appeals concluded that

7

stopping in front of a known drug house with someone, walking into the house, nervousness, and initial noncompliance were sufficient to give rise to probable cause to search Green's truck. *Id.* at 465. Lindsey responds that nothing suggests that the officers were in danger or connected Lindsey to a possible crime. His presence in front of a crack house, his apparent nervousness, and the fact that driver did not have a driver's license issued to her or any other identification, however, were sufficient to give rise to reasonable suspicion.

Once Lindsey stepped out of the vehicle, the trial court, based on the combination of factors, reasonably could have concluded that the officers had reasonable suspicion to detain him for further questioning. Once Lindsey voluntarily admitted that he was carrying a controlled substance without a prescription, the officers had probable cause to search Lindsey. *See Sandoval v. State,* 860 S.W.2d 255, 259–60 (Tex. App.—Houston [1st Dist.] 1993, pet. ref'd);

**Conclusion**

We hold that the trial court did not abuse its discretion in denying the motion to suppress. We therefore affirm the judgment of the trial court.


Jane Bland
Justice

Panel consists of Justices Bland, Massengale, and Lloyd.

Do not publish. TEX. R. APP. P. 47.2(b).

8